WELBORN v. DIXON.

1. PLEADING—DEMURRER—MOTION.—When the allegations of a complaint are appropriate to more than one cause of action, the remedy is not demurrer, but motion to elect, and on demurrer, Court will not decide what cause of action plaintiff should rely on.

2. REAL PROPERTY—STATUTE OF FRAUDS—PAROL.—An agreement to reconvey land, using the descriptive words, "Deed back to J. said piece of land, containing twenty-seven acres," may be made certain by parol reference to deed of J. for same land, and is not void under statute of frauds.

3. DEED—MORTGAGE—PAROL.—That a deed was intended as a mortgage may be shown by parol, and upon payment of debt, grantor is entitled to reconveyance.

4. PLEADINGS—DAMAGES.—The complaint here alleges damages arising from breach of contract. Is it necessary to state amount of damages elsewhere than in prayer?

5. CONTRACT—FRAUD—DAMAGES—REAL PROPERTY.—When a breach of contract to convey lands is accompanied with a fraudulent act, the defendant may be made to respond in punitive damages as well as compensatory.

MR. JUSTICE WOODS *dissents.*

6. IBID.—REAL PROPERTY — TRUSTEE — EQUITY — DAMAGES.—Where a grantee who has taken a deed under contract to reconvey upon payment of a debt sells the land, upon tender of debt and refusal to reconvey, grantor may sue in equity for proceeds of sale, but in such action he is not entitled to punitive damages.

Before ALDRICH, J., Anderson, July, 1903. Affirmed.

Action by J. Welborn against J. W. Dixon. From Circuit decree, defendant appeals.

*Messrs. Tribble & Prince* and *Quattlebaum & Cothran,* for appellant, cite: *In contract for sale of land, if description be indefinite, parol cannot be resorted to to make it certain:* 7 Rich. Eq., 378; 13 Rich. Eq., 257; 21 S. C., 491; 25 S. C., 506. *Sattute of frauds is not satisfied by reference to another writing:* 13 Rich. Eq., 257; 28 S. E., 383; 33 S. C., 367. *No action for damages can be had on void contract:* 60

S. C., 373. *As to measure of damages:* 1 Bay, 357; 1 McM., 116; 51 S. C., 143; 52 L. R. A., 242; 5 Ia., 352; 35 Neb., 429; 65 Me., 67; 21 Mich., 351; 91 Hun., 542; 40 N. Y., 60; 58 Mo., 40; 7 Utah, 113; 21 Ont. R., 89; 1 McM., 57; 6 Wheat, 108; 2 Spear, 616. *Punitive damages cannot be recovered here:* 20 S. C., 519; 35 S. C., 493; 8 Ency., 2 ed., 633, 639; 12 Ency., 2 ed., 20; 26 L. R. A., 169; 66 S. C., 66; Weaks Underhill on Torts, 102.         ,

*Mesrs. B. F. Martin* and *G. B. Green,* contra (no citations).

## Statement of Facts.

November 10, 1904. This is an appeal from an order overruling a demurrer to the complaint on the ground that it did not state facts sufficient to constitute a cause of action. The complaint contains two causes of action, the first of which is thus alleged:

"1. That prior to the        day of March, 1902, plaintiff was the sole owner in fee simple of a tract of land in county and State aforesaid, containing twenty-seven acres, more or less, just outside the town of Pelzer, conveyed to him by Sarah M. Allen by deed of September 10th, 1897, recorded in the office of R. M. C. for said State and county, in book QQQ, at page twenty, which is here referred to for full description of said land.

"2. That on March 15th, 1902, the plaintiff having borrowed money of defendant, and purposing to secure the payment of the debt, executed to him a deed to said land, and both together, executed, at the time of the execution of the said deed, a written contract, a copy of which is as follows: 'State of South Carolina, County of Anderson. Articles of agreement entered into this 15th day of March, 1902, between J. W. Dixon and J. W. Welborn, witnesseth: That provided J. W. Welborn shall pay to J. W. Dixon on or before November 1st, 1902, the sum of three hundred and eighty-five dollars, the said J. W. Dixon agrees to deed back

to J. W. Welborn said piece of land, containing 27 acres, more or less, and to pay him ten per cent. interest on said amounts, and all costs. Signed, J. W. Dixon, L. S., J. W. Welborn, L. S. Witnesses: Signed, A. G. Pinckney, L. B. Roberts.' Said deed was an ordinary fee simple warranty title like in all respects to the usual form of such titles.

"3. That the amount of the plaintiff's debt to defendant, together with principal, interest and all charges, never exceeded the sum of three hundred and eighty-five and 00-100 dollars ($385.00), and the purpose and understanding of the parties to the agreement was that the papers hereinabove referred to should constitute a mortgage upon said land to secure the payment of said debt.

"4. That some months before November 1st, 1902, defendant, in utter disregard of his contract to reconvey to plaintiff, in wilful fraud of his said agreement, and in flagrant, deliberate and wanton violation of plaintiff's rights in the premises, sold and transferred and conveyed said land to a third party, thus putting it out of his power to carry out his contract aforesaid.

"5. That a few days prior to November 1st, 1902, plaintiff by his attorney made defendant a legal tender of the sum of three hundred and eighty-five and 00-100 dollars ($385.00), to secure a reconveyance from him of said land, but defendant, as plaintiff is informed and believes, refused said tender, stated that he had sold said land to Mr. J. W. Williams, and that he could not and would not reconvey it to plaintiff, and declared, as he had done repeatedly, that he would spend a thousand dollars on the matter rather than let defendant have anything out of it. And he has subsequently refused and still refuses to carry out said contract, in violation both of the spirit and letter thereof. All to plaintiff's damage two thousand dollars."

The second cause of action contains substantially the same allegations as the first, except the following, instead of paragraphs 4 and 5 of the first cause of action, to wit:

"9. On information and belief, plaintiff says, as follows: Some months prior to November 1st, 1902, defendant, in wilful fraud of the rights of plaintiff, and with the deliberate, wanton and wilful purpose of defrauding him, of violating the trust that arose under the facts of the case, and of fraudulently converting to his own use the whole proceeds of his sale of said land, in fraud of plaintiff's rights therein, did sell, transfer and convey said land to Mr. J. W. Williams for the sum of six hundred dollars (in cash and chattels), and did collect and appropriate to his own use all of said cash and chattels, refusing to account to plaintiff for any part thereof, and declaring that he would spend one thousand dollars in this matter before defendant should have one cent. Plaintiff was prepared before November 1st, 1902, to pay to defendant the said sum of three hundred and eighty-five dollars ($385.00), and a few days before that time he got the money and made (through his attorney) a lawful tender of the full amount due defendant, but he refused, has since refused, and still refuses, to accept the same, and account to plaintiff for the proceeds of his unauthorized dealing with said land or any part thereof, all to plaintiff's damage two thousand dollars.

"Wherefore, plaintiff prays judgment against the defendant for two thousand dollars, and the costs of this action."

The grounds of demurrer to the first cause of action are as follows:

"1. Because the contract set out in paragraph 11, the refusal of performance of which is made the basis for the first cause of action, is void under the statute of frauds, in that it appears on the face thereof that said agreement for the sale of the land is too indefinite, in that the agreement set out does not so describe the property as to be identified by the Court, and it is submitted that an action for damages does not arise from the breach of a void agreement.

"2. Because it appears upon the face of said complaint that said cause of action alleged therein is not founded upon

a tort, where some right of person or property is invaded maliciously, violently, wantonly or with reckless disregard of social or civil obligations; that whatever rights plaintiff has in the premises arises solely *ex contractu,* by a breach, recision or refusal of defendant to perform the alleged executory civil agreement for the sale of land, and no facts are alleged and no damages are shown as arising from the natural results of a breach of said agreement, and defendant submits that an action for exemplary damages does not lie for the breach of an executory agreement for the sale of land.

"3. Because it appears upon the face of the complaint that the defendant has rescinded or refused to perform the alleged agreement for the sale of land, set out in paragraph 11 of said complaint, and since such refusal or recision is not a tort in law sounding in punitive damages, and no facts appearing in the complaint that plaintiff has been damaged from the natural results of the alleged refusal to perform said agreement, it is submitted that plaintiff cannot maintain said cause of action."

The grounds of demurrer to the second cause of action are substantially the same as the foregoing.

### Opinion.

MR. JUSTICE GARY (after stating the foregoing facts). We do not deem it necessary to consider the assignments of error in detail, but will state the principles that will dispose of all the exceptions.

We will first consider whether there was error in overruling the demurrer to the first cause of action. A complaint is not subject to demurrer if its allegations show that the plaintiff is entitled to any relief whatever, even though it may be different from that to which the plaintiff supposes he is entitled. *Ladson* v. *Mostowitz,* 45 S. C., 388, 23 S. E., 49; *Strong* v. *Wier,* 47 S. C., 307, 25 S. E., 157; *Conner* v. *Ashley,* 49 S. C., 478, 27 S.

E., 473.   When the allegations of the complaint are appropriated to more than one cause of action, the remedy is not by demurrer (if any of the allegations are sufficient to constitute a cause of action), but is thus stated in *Cartin* v. *Ry.Co.,* 43 S. C., 221, 20 S. E., 979 : "If two causes of action were set forth in the complaint without being separately stated, the defendant, it is true, had the right to make a motion that the complaint be made more definite and certain; or if allegations were made which were unnecessary to sustain the cause of action stated in the complaint, to make a motion to strike out such allegations as irrelevant and as surplusage.   Pom. R. & R. R., secs. 447 and 451.   If the defendant waived said objections by failing to make such motions, then the plaintiff had the right to the relief to which all the allegations showed he was entitled.   The plaintiff, where the allegations of the complaint are appropriate to either of the two causes of action, may be required upon motion of the defendant to make his election as to the cause of action upon which he will proceed to trial."   Citing *Westlake* v. *Farrow,* 34 S. C., 270, 13 S. E., 469 ; *Hammond* v. *R. R.,* 15 S. C., 10, and *Hellams* v. *Switzer,* 24 S. C., 39.   Under such circumstances, this Court will not undertake to say what particular cause of action the plaintiff has attempted to set forth, and to which he should be confined in determining the sufficiency of the complaint.   This would be an election of remedy by the Court instead of the plaintiff. The case of *Cartin* v. *R. R., supra,* has been affirmed in a number of subsequent cases, the most recent of which is *Marion* v. *Charleston,* 68 S. C., 257.

The words in the agreement, "deed back," show that it had reference to the land which had been conveyed by the plaintiff to the defendant, and as the description of the land could be made certain by referring to that conveyance, the agreement was not subject to the objection set forth in the ground of demurrer numbered "1." That must be regarded as certain which can be made certain.

We do not, however, regard this question of vital importance; for even if said agreement was too indefinite, the complaint would not be demurrable on that ground, as the land which the complaint alleges was conveyed by the plaintiff to the defendant, by way of mortgage, to secure the payment of a loan, is particularly described in the first paragraph of the complaint. Even if there was no written agreement for a reconveyance, the plaintiff would be entitled to a reconveyance upon showing that the deed was intended as a mortgage, and that he had complied with his part of the contract. These facts could be shown by parol testimony. *Brownlee* v. *Martin,* 21 S. C., 392.

We will next consider the nature of the complaint. There are allegations of the complaint that the defendant committed a breach of the contract. The appellant, however, contends that this is not sufficient to constitute a cause of action, by reason of the fact, that the complaint does not allege damages arising from the *breach of the contract.* We do not take appellant's view of the fact that the complaint doesn't allege damages arising *ex contractu.* The complaint alleges that the plaintiff sustained damages to the amount of $2,000. This allegation has reference to all the wrongful acts of the defendant set forth in the complaint, including the alleged breach of contract. Furthermore, it is at least questionable, whether it was necessary to allege specifically such damages as were the direct and natural result of the alleged wrongful act, when they are claimed in the demand for relief. *Levy* v. *Legg,* 23 S. C., 282; *Norris* v. *Clinkscales,* 47 S. C., 488, 25 S. E., 797. In an ordinary action for damages arising *ex contractu,* the plaintiff is only entitled to recover such as are the direct, natural and proximate result of the breach of the contract. *Sitton* v. *Macdonald,* 25 S. C., 68. The allegations of the complaint that the plaintiff and the defendant entered into the contract therein set forth, and that the defendant committed a breach thereof from which the

plaintiff suffered damage, were, in themselves, sufficient to constitute a cause of action.

There are allegations also not only appropriate to an ordinary action for damages arising *ex contractu,* but showing that the breach of contract was accompanied by a fraudulent act. In the case of *Lee* v. *Lee,* 11 Rich. Eq., 574, the Court quotes with approval the following language from *Russell* v. *Southard,* 12 How., 139 : "To insist on what was really a mortgage as a sale is, in equity, a fraud, which cannot be successfully practiced under the shelter of any written papers, however precise and complete they may appear to be." Under the allegations of the complaint it was a fraudulent act on the part of the defendant, when he intentionally disposed of the land as the owner thereof, knowing that it was conveyed to him by way of mortgage, and that it belonged to the plaintiff (but, of course, subject to the mortgage).

The question, then, is presented, whether in an action arising out of a breach of contract, attended with a fraudulent act, the defendant is liable for examplary damages. There is no doubt as to the general principle, that in an action for breach of contract the motives of the wrongdoer are not to be considered in estimating the amount of damages, and that he is only liable for such damages as are the natural and proximate result of the wrongful act. When, however, the breach of the contract is accompanied with a fraudulent act, the rule is well settled, certainly in this State, that the defendant may be made to respond in punitive as well as compensatory damages. In a note, on page 214 of Sedgwick on Damages (3d ed.), the author recognizes that punitive damages are recoverable in this State. He says: "In South Carolina the question has been discussed at large, and the grounds distinctly taken, that even in cases of assumpsit, damages will be given on the ground of fraud." He then comments on the case of *Rose & Rodgers* v. *Beattie,* 2 N. & McC., 538. Commenting on the text (which states a different rule from that prevailing in this State), that author,

in a note on page 217, says: "I am far from desiring to express any opinion in favor of the doctrine of the text; on the contrary, if the plaintiff in an Anglo-Saxon court of justice shall ever be permitted to state his complaint according to the actual facts, and not be compelled to use an unmeaning formula, I can see no reason, greatly as legal relief would be thus extended, why examplary damages should not be given for a fraudulent or malicious breach of contract, as well as for any other wilful wrong. Damages are given by the civil law in many cases of this kind. So they are in Louisiana, the jurisprudence of which State is very much fashioned on the great Roman original." Since the distinction in forms of action has been abolished, there is stronger reason for allowing examplary damages in actions for breach of contract, attended with fraudulent act, than when the case of *Rose & Rodgers* v. *Beattie,* 2 N. & McC., 538, was decided.

In *Rose & Rodgers* v. *Beattie,* 2 N. & McC., 538, an action of *assumpsit* was brought to recover damages upon the sale of cotton alleged to have been fraudulently and falsely packed, by wetting the cotton in the centre of the bales. It was sent to Liverpool and sold as sound cotton at the then current price. After the sale, the fraud was discovered, and the cotton returned and resold as damaged, at a considerable loss. The defendants contended that if liable at all, the plaintiffs could only recover the price paid at Charleston, with interest. The Court said: "Assumpsit is *nomen generalissimum,* under which a great variety of special cases are embraced. It includes every case by simple contract, whether in the nature of a warranty, a promise to pay money, or an undertaking to do or perform any act, from whence a promise, either express or implied, can arise. The damages to be recovered must always depend upon the nature of the action, and the circumstances of the case. The difference of opinion which seems to exist on the subject, I apprehend has arisen from confounding the distinctions between the different forms of assumpsit. In an action for

money had and received, the actual amount of money received with interest in some cases should be the measure of damages. In an action for goods or any specific chattel sold and delivered, the value of the thing sold; and so on, in all other cases which furnish a standard by which the jury can be governed. But in cases of fraud, and other cases merely sounding in damages, the jury may give a verdict to the whole amount of the injury sustained or imaginary damages. * * * In Bacon it is said: 'if there are any circumstances of hardship, fraud or deceit, the jury may consider of them, and proportion and mitigate the damages as they please.' 2 Bacon Tit. Damages. And Lord Mansfield says: 'that fraud alone may be ground for an assumpsit; where there is no express undertaing, as where a person sells property as sound knowing it to be otherwise.' *Stewart* v. *Wilkins,* Doug., 18." After commenting on certain cases, the Court uses this language: "I apprehend that, after all these cases, it can no longer be considered (as has been somewhat confidently asserted in this case), that (even) vindictive damages may not be given in an action of assumpsit; and surely it will not be denied that the plaintiff may recover the amount of the loss which he has actually sustained." See, also, *Garrett* v. *Stuart,* 1 McC., 514.

In *D'Orval* v. *Hunt,* Dudley, 180, it was held that for the breach of an executory contract, *without fraud or imposition,* the jury can only give such damages as fairly and naturally result from it, and which can be measured by a pecuniary standard, thus showing that the measure of damages is different when there is fraud.

The allegations of the complaint are also appropriate to an action of tort, committed with a fraudulent and malicious intent. The following definition of a tort is set forth in 26 Enc. of Law, 72 (1st ed.) : "The word tort means nearly the same thing as the expression civil wrong. It denotes an injury inflicted otherwise than by mere breach of contract; or, to be more nicely accurate, a tort is one's disturbance of another in rights which the law has created, either

in the absence of contract or *in consequence of a relation which a contract* had established between the parties (italics ours). The complaint alleged a tort when it stated that the defendant sold the land which he held as a security for the repayment of the loan in consequence of the relation which the contract had established between the parties. The further allegation that the tort was committed with a malicious and fraudulent purpose, made the defendant liable for examplary damages as well as actual damages. *Chiles* v. *Ry.,* 69 S. C., 332.

The next question for consideration is whether the second cause of action set forth in the complaint was subject to demurrer. The only question that has not been disposed of, in considering the first cause of action, is whether the defendant became liable under the allegations of the complaint for the proceeds of the land. The allegations of the complaint show that the defendant occupied a fiduciary relation in regard to the land, and that the sale thereof was in violation of his trust. The plaintiff, therefore, had the right, either to follow the land or the proceeds of the sale, just as in other cases when the trustee sells the trust estate in violation of the trust. In order, however, that the proceeds arising from the sale of the land may be declared to be impressed with a trust, it will be necessary to invoke the aid of the Court in the exercise of its chancery powers, as the legal title to the land was in the defendant. In such case, *punitive* damages cannot be awarded on the equity side of the Court. *Bird* v. *R. R.,* 8 Rich. Eq., 46; *Busby* v. *Mitchell,* 29 S. C., 447, 7 S. E., 618.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.

MR. JUSTICE WOODS *dissenting.* By reference to the complaint it will be seen that the plaintiff sets up two separate causes of action. The defendant demurred to the complaint as to each cause of action separately, on the ground that it failed to state facts sufficient to constitute a cause

of action.    The Circuit Court overruled the demurrer, and the defendant appeals.

In the first cause of action, the plaintiff alleges his conveyance of a tract of land to defendant as security for a loan of $385, the written agreement of the defendant to reconvey on payment of the debt by November 1, 1902, the understanding that the two papers should constitute a mortgage, the defendant's conveyance of the land to another before November 1, 1902, in wilful and fraudulent breach of his contract and violation of plaintiff's rights, tender of plaintiff's debt before maturity, defendant's refusal to reconvey, accompanied by a declaration that he would spend a thousand dollars rather than let plaintiff have anything out of the transaction.    On these facts the plaintiff alleges and claims $2,000 damages.

In his second cause of action, the plaintiff sets out the same facts as in the first, and alleges in addition that the defendant under the contract became a trustee of the property; that his sale to another was for the consideration of $600, which he converted to his own use, refusing to account to the plaintiff for any part of it; and that this sale was made with the deliberate and wilful purpose of defrauding the plaintiff, to his damage two thousand dollars.

It will be observed, the essential difference between the two causes of action is that in the second a breach of trust is alleged and the amount realized for the land is mentioned, while in the first the fraudulent breach of contract to reconvey is set up without mention of a trust and without any intimation of the value of the land.    Manifestly, therefore, the plaintiff in stating his two causes of action, meant in the first to complain of the fraudulent breach of contract to reconvey the land, disregarding the breach of trust and leaving that for the gravamen of his second cause of action. It is also clear that the first cause of action is intended to be for punitive as distinguished from compensatory damages, because no value is set on the land which the defendant had agreed to reconvey to the plaintiff; nor is it alleged to

be of value greater than the debt for which it was pledged, and without such excess of value there could be no actual damage. The first cause of action should, therefore, be regarded, as the pleader clearly intended it, distinctly for punitive damages based on a fraudulent breach of contract. Even if there were doubt as to whether the plaintiff meant to sue for the tort or for breach of the contract, every intendment is in favor of regarding the action *ex contractu.* 4 Ency. P. & P., 915.

I consider first the question raised by the demurrer to the first cause of action, whether punitive damages are recoverable for a fraudulent breach of contract. This question was answered in the negative by this Court in *McClendon* v. *Wells,* 20 S. C., 520, and the views there expressed are in accord with those of other courts and of textwriters. Wood's Mayne on Damages, sections 45 and 46; note to *Spellman* v. *R. R. Co.,* 28 Am. St. Rep.. 874; 12 A. & E. Ency. Law, 20; 3 Parsons on Contracts, 179; 2 Sutherland on Damages (3d ed.), sec. 390; 13 Cyc., 113; *Hurxthal* v. *Boom Co.,* 97 Am. St. Rep., 968. Citation of the numerous cases referred to in these authorities is omitted. The only generally recognized exception to the rule is an action for breach of a marriage contract.

In accordance with this view, where one who has contracted to convey land fraudulently refuses to convey, or by his own act fraudulently puts it out of his power to convey, the measure of damages is the value of the land at the time the contract should have been performed, less the contract price. *Smith* v. *Bolles,* 132 U. S., 125, 33 L. ed., 279; 52 L. R. A., 242, note; *Foley* v. *McKeegan,* 66 Am. Dec., 107, and note. Though the precise question here under discussion was not involved, the difference in damages arising from tort and breach of contract is recognized in *Devereux* v. *Champion Cotton Press Co.,* 17 S. C., 73, and *Colvin* v. *Oil Co.,* 66 S. C., 66, 44 S. E., 380.

In Sedgwick on Damages, the statement is made that South Carolina is out of line with other jurisdictions on this

subject, and *Rose* v. *Beattie,* 2 N. & McC., 538, is cited as
establishing the doctrine in this State that punitive damages
may be recovered for fraudulent breach of contract.    In this
the learned author has fallen into error.    *Rose* v. *Beattie*
was an action of assumpsit to recover damages upon a sale
of water-packed cotton made by defendant to plaintiffs in
Charleston.    The plaintiffs shipped the cotton to Liverpool
and sold it, and upon discovery of the fraud it was returned
to their Liverpool correspondent, and resold at public auc-
tion as damaged cotton at considerable loss.    "The presid-
ing Judge instructed the jury that the defendant was liable,
and that they might give a verdict for the whole amount of
damage that the plaintiffs had sustained, which was the dif-
ference between the two sales in Liverpool, with interest."
As to the damages, the sole question involved in the appeal
was whether the defendant was liable for the price paid to
him in Charleston or for the difference between the two
sales made in Liverpool.    The Court sustained the Circuit
Judge in adopting the difference between the two sales in
Liverpool as the only just and true measure of damages.
The Court says: "It cannot be seriously contended that the
seller should merely refund the money which he had re-
ceived and leave the purchaser to pay the costs of transpor-
tation across the Atlantic, and all the incidental expenses.
The expenses of exportation and original purchase money
ought not to be the rule, because a depression of price in
the foreign market might reduce the actual loss, by reason
of the fraud, below those expenses, and the seller ought not
to be answerable for a loss to which he had not contributed.
Upon the principle of reciprocity, as well as of good faith,
the parties ought to be placed upon the same footing they
would have been if there had been no deception; and that
is the effect of this verdict."    It will be borne in mind that
when this case was decided practically all cotton was shipped
out of the State, and the seller would be regarded as having
in view the export cost of transportation and resale to be
incurred by the buyer when he made the sale.    The dam-

ages allowed were, therefore, well within the rule of *Hadley* v. *Baxendale*. The Court undertook to do nothing more than place the plaintiffs in the same *financial* condition they would have occupied if the fraud had not been committed. Punitive damages were not claimed or allowed, and the case, therefore, could not involve the question here under discussion. It is true, Judge Nott, in the course of his decree, does intimate an opinion that vindictive damages, or, as he curiously calls them in one place, *imaginary* damages, may be allowed in an action of assumpsit, but no such question was involved in the case, or in *Farrand* v. *Bouchell,* Harper, 83, where the same Judge again refers to the subject. These *dicta* are entitled to great consideration as the views of an eminent judge, but they are not binding, and should not be allowed to overthrow a doctrine so long established by the overwhelming weight of authority and reason.

In giving compensation for breaches of contract, the utmost that the law undertakes is to place the parties in the financial condition they would have been in if the breach had not occurred. It is true, fraud always merits punishment, but the courts regard it unwise and impracticable to attempt to punish a fraudulent breach of contract by requiring the defaulter to pay to the other party more than he has lost by the breach. The advantage of punishing the fraud would be more than counterbalanced by the disastrous uncertainty in the administration of the law of contracts which would surely result. If the plaintiff in this case is allowed to recover punitive damages for the defendant's wilful and fraudulent failure and refusal to keep his promise to reconvey, then the defendant would have been entitled to punitive damages if the plaintiff had wilfully and fraudulently refused to repay the money borrowed, and this would hardly be contended for. I think the demurrer to the first cause of action should be sustained.

As we have seen, the second cause of action stands on different ground. Here the gravamen is violation of the trust relation which grew out of the contract, in that the

defendant sold the land conveyed to him as a security. The allegations here present an action for tort founded upon contract. We now consider whether punitive damages may be recovered under this cause of action. "The damages in actions of tort founded upon contract must be estimated in the same way as they are estimated in breach of contract; for a man cannot, by merely changing the form of his action, put himself in a better condition." Moak's Underhill on Torts, 102; Wood's Mayne on Damages, 70, note. This rule has no application to common carriers of passengers and some others charged with public duties. but we are not now concerned with this exception.

Even in actions on the case for deceit, based on false representations as to existing facts inducing one to enter into a business contract to his prejudice, the measure of damages is usually the resulting pecuniary loss, when such loss can be readily ascertained. To allow more than this as vindictive damages, as said by the Supreme Court of Michigan, would be "to abandon a certain rule which would do complete justice for an uncertain one that can hardly fail to do injustice" (*Warren* v. *Cole,* 15 Mich., 273). *Parker* v. *Walker,* 12 Rich., 138, was an action for deceit, the deceit consisting in selling to plaintiff a tract of land when the defendant knew he had no title to fifty-six acres of the one hundred and twenty which he undertook to sell. The plaintiff, subsequent to the sale and before the action was commenced, perfected his title to all but ten acres by obtaining a grant from the State at a cost of ten dollars. Under the instruction of the Court, the jury found a verdict for the *pro rata* value of all the land to which defendant had no title. Judge O'Neall, delivering the opinion of the Court of Appeals, held that the allegation of deceit was sustained by the proof, and in the absence of any other measure of plaintiff's loss, the *pro rata* value of the fifty-six acres to which defendant had no title would have been the true measure of damages; but, inasmuch as the plaintiff had perfected his title to all but ten acres at an expense of ten

dollars, he could only recover that sum and the *pro rata* value of the ten acres actually lost. The same doctrine is stated with force in *Durfee* v. *Newkirk,* 47 N. W., 351 (Mich.).

It is important to observe, therefore, that whether we have regard to the first cause of action for the breach of contract, or to the second cause of action for the tort growing out of the breach of contract, in this case the damages are capable of actual, definite ascertainment. They depend entirely on the value of the land. The loss of the land is the sole element of damage, and the value of the land less the debt is the obvious and only damage which plaintiff has suffered.

In this State, punitive damages are regarded as made up of two elements, punishment of wrong, and vindication of private right by requiring payment for outrage, oppression or indignity, which it is felt should be atoned for by compensation, but which cannot be expressed by computation. This Court has recently held in a number of cases that such damages are founded on the right of the party injured and not on the discretion of the jury. *Beaudrot* v. *Ry.,* 69 S. C., 160. Under the facts alleged here, if punitive damages are allowed, the court would award them to the plaintiff altogether as punishment of the defendant; for the injury to plaintiff is entirely pecuniary, and actual damages would fully vindicate his rights. The plaintiff has no right to punishment of the defendant, when he may be fully compensated for the wrong done to himself without such punishment.

I have endeavored to show that punitive damages are not recoverable under the facts alleged here, either for the breach of contract, which is the gravamen of the first cause of action, or for the violation of the trust relation which grew out of the contract, which is the gravamen of the second cause of action. In the second cause of action, however, plaintiff alleges the defendant sold for $600 the land pledged to him for a debt of $385, and refused to pay over or account to him for the purchase money. This fact,

coupled with the others alleged, is manifestly a sufficient statement of actual damage, and for this reason the demurrer to the second cause of action cannot be sustained. This cause of action being *ex delicto,* it may be that, though no punitive damages could be recovered, yet as they are claimed, actual damages could be recovered under the act of 1898 without any allegation of actual damage. As actual damages are alleged, however, this question under the act of 1898 does not arise.

The defendant's objection, that the agreement to reconvey set out in the complaint is void under the statute of frauds, because it does not identify the property, cannot be sustained. The agreement was to "deed back to J. W. Welborn said piece of land, containing twenty-seven acres, more or less." This was equivalent to saying that the contract related to the same tract of twenty-seven acres of land conveyed by the plaintiff to defendant, and the complaint alleges that the land is fully described in the deed.

In my opinion, the demurrer to the first cause of action should be sustained, with leave to the plaintiff to move to amend as he may be advised, and the demurrer to the second cause of action should be overruled.