## 10163

### RICHMOND GUANO CO. v. KIRKPATRICK.

(98 S. E. 327.)

1. AGRICULTURE—FERTILIZERS.—In action on note for purchase price of fertilizer, where there was no evidence of fraud by plaintiff, and substantial compliance by plaintiff with its contract was shown, and the only deficiency proved was a slight shortage in the percentage of available ammonia below the guaranteed analysis, the Court properly directed verdict for plaintiff, making allowance for the shortage in accordance with Civ. Code 1912, secs. 2315-2330.

2. AGRICULTURE—DEFENSE TO NOTE.—Fraud is a defense to action for purchase price of fertilizer, at least where there has been no substantial compliance with the contract; the remedies and measure of damages produced by Civ. Code 1912, secs. 2315-2330, not being, in such case, exclusive.

· Before DeVore, J., Fairfield, Spring term, 1917. Affirmed.

Action by the Richmond Guano Company against Walter L. Kirkpatrick. From a judgment for plaintiff on a directed verdict, defendant appeals.

Paragraphs 3 and 4 of the answer, to which reference is made in the dissenting opinion, are as follows:

(3): Further answering the said first cause of action defendant says: That some time during the month of March, 1914, the plaintiff contracted and agreed to sell to defendant 56 tons of a special fertilizer to be used during said year in the cultivation and raising of his crops, and by the said contract plaintiff undertook, agreed, and contracted to manufacture the said fertilizer from and out of certain named, specified, and designated ingredients, substances, and materials, and no others, and to deliver the said fertilizer, when manufactured, to defendant at Rockton, in the State of South Carolina, and defendant to pay therefor $26.55 per ton. Under the contract of plaintiff with defendant the said fertilizer was to be made, compounded, and manufactured from

out of the following ingredients, materials, and substances: Acid phosphate, potash, and blood and fish scrap, with sufficient tobacco stem to act as a dryer, and the said fertilizer, when compounded, made, and manufactured out of the ingredients, substances, and materials above mentioned, the same was to contain 8 per cent. of available phosphoric acid, 3 per cent. of potash, and 4 per cent. of ammonia, and by the said contract and agreement the 4 per cent. of ammonia in said fertilizer was to be derived from blood and fish scrap as the source of the same, and from no other material; but plaintiff, unmindful of its said contract, with intent to deceive, overreach, mislead, and defraud the defendant delivered to him at Rockton 56 tons of cheap and worthless stuff or dirt, which it represented to be the special fertilizers it had contracted and agreed to manufacture and deliver to defendant, and the plaintiff well knew, at the time it delivered the said worthless stuff or dirt, that the same did not contain and was not made and manufactured out of the ingredients, substances, and materials called for by the contract, and that it had knowledge and wilfully used, in the manufacture of the same, some other cheap and worthless materials or substance as the source from which the ammonia in said fertilizer was obtained, and defendant, relying upon said contract, and having no knowledge or means of knowledge other than the representation of the plaintiff as contained in said contract, accepted the said worthless fertilizer, believing at the time that the same was what he had contracted for, and gave to the plaintiff the note mentioned in the first cause of action.

(4) That the said fertilizer sold and delivered to defendant was the consideration for the said note mentioned in the first cause of action, but defendant would not have accepted said worthless fertilizer, nor given the said note therefor, had he known at the time that the said fertilizer was not what he had contracted for, and that the plaintiff had falsely, fraudulently, and deceitfully misled him into believing that the

same was in every respect what he had contracted for and would come up to the guaranteed analysis, when the same did not come up to the analysis above stated, and was not manufactured or made of the materials and substance contracted for, and the said fertilizer was worthless, and the consideration for the said note has failed, and the same is without consideration, as the defendant has derived no benefit from said fertilizer, but, on the contrary, has been injured by the deceit, false dealing, and deception of the plaintiff in delivering to him a worthless article as a fertilizer, when it well knew defendant was dependent upon said fertilizer to raise a crop during the year 1914, and defendant owes the plaintiff nothing, and there is nothing due and owing on said note, as the consideration for said note has failed, and said note is without consideration to support it, and is null and void.

*Mr. J. W. Hanahan,* for appellant, submits: *That there was abundant evidence to carry the case to the jury on the question of fraud:* Civil Code, vol. I, sec. 2329. *Failure of seller to ship an essential article in an entire contract validates it, and the buyer may refuse to accept the article:* 73 S. C. 374. *Defendant had a right to assume the goods contained the ingredients contracted for and was not compelled to make a tender back of the goods as it was impossible for him to do so:* 37 S. C. 17. *There is no contract against effects in crops in these notes as there was in the case of Germofert v. Cathcart. See Kerwin v. Chemical Co.,* 177 S. C. 493; *Germofert v. Cathcart,* 97 S. C. 392, *where the counterclaim was held proper. In Germofert v. Cathcart,* 104 S. C., *it was held that a contract against liability for practical results was not unlawful. If a special contract was good in one case it was good under the statute, it is difficult to see why it would not be good in another, when it covers a state of facts not within either the letter or the spirit of the act. It was error to admit in evidence, over defendant's objection, certain circulars supposed to have*

been issued by Clemson College as the basis for fixing the price of the fertilizers: Vol. I, Code 1912, sec. 2325.

Mr. J. W. Radsdale, for respondent, submits: *The manu-facture and sale of commercial fertilizers have been exhaustively regulated by the statute law of this State:* Chap. 34, art. I of the South Carolina Code, vol. I, sec. 2329. *The statute law of this State covers to the minutest detail the rights and remedies of both buyer and seller, and where the statute has provided a new remedy on any subject, it must be followed to the exclusion of all existing remedies:* 15 S. C. 348; 84 S. C. 256. *As to statutory provisions:* Civil Code, vol. I, 1912, sections 2322, 2323, 2324, 2325, 2329, 2327. *In so far as the statute law on this subject, excludes all implied warranty of results from the use of fertilizer, it is in affirmance of the law as it was prior to the enactment of the present statute law:* 40 S. C. 31; 1 McC. 421; 1 Hill (S. C.) 383; 4 Strob. 181; 12 S. C. 586. *Where one fails to get the fertilizer which he buys, the statute has fixed definitely the measure of damages which he may recover. It can make no difference with what motive the seller acted in failing to ship the identical article purchased·* A. E. E., vol. VIII, p. 639; 54 Wis. —; 8 A. E. E., note 5, p. 639. *As to the analysis of fertilizers:* Civil Code, vol. I, secs. 2319, 2322; Clemson Bulletin 181. *As to fixing the price or commercial value of this material, and publishing the same:* Civil Code, vol. I, 1912, sec. 2323; C. A. C. Bulletin 181.

February 15, 1919.

The opinion of the Court was delivered by Mr. Justice Watts.

This case was tried before Judge DeVore, and a jury, at the February term of Court, 1918, for Fairfield county. After all of the testimony was taken, his Honor directed a verdict for the plaintiff. After entry of judgment thereon, defendant appealed.

Exception 1 alleges error in his Honor directing a verdict, when there was abundant evidence on the question of fraud to carry the case to the jury on this issue, and also, under the statute, the defendant could not prove fraud, either as a defense or by way of counterclaim. His Honor ruled out the evidence offered to show the effect the fertilizer had on defendant's crop, holding that the statute law of this State provided an exclusive remedy for the sale of fertilizers deficient in ingredients guaranteed by analysis, or short in commercial value, either one or both, and, having fixed a measure of damages to cover every possible deficiency, or shortage, this remedy must be followed. His Honor also held, where there was a deficiency or shortage in the value of commercial fertilizer, the measure of damage was prescribed by statute, and that an allegation of fraud by the purchaser could not have the effect of admitting testimony showing the results on crops by the use of the fertilizer. We see no error in this ruling. There was no evidence of fraud to go to the jury. The proof was plain as to how the fertilizer sold turned out, as to the guaranteed analysis, and its shortage in value made it only a matter of calculation. This disposes of exceptions 1, 2 and 3, which are overruled.

Exceptions 4 and 5 are overruled. We see nothing in his Honor's ruling whereby defendant was prejudiced.

Judgment affirmed.

MR. JUSTICE HYDRICK. I concur in affirming the judgment on the ground that, under the evidence, the verdict of any fair jury would have been the same as that directed by the Court. I agree with Mr. Justice Watts that the evidence was not sufficient to require the Court to submit the issue of fraud to the jury.

But I do not concur in the view that the remedies and measure of damages provided by the statute for deficiencies

in the guaranteed analysis or commercial value of fertilizers sold are exclusive of all others, or that the statute covers all possible cases of fraud in contracts for the sale of fertilizers, or all possible deficiences that may arise in the guaranteed analysis or guaranteed commercial value thereof. The only deficiency proved was a very slight shortage in the percentage of available ammonia below the guaranteed analysis, and for that the proper allowance was made in accordance with the provisions of the statute. There was substantial compliance with the contract, and substantial justice has been done, and, therefore, I think the judgment should be affirmed.

MR. JUSTICE GAGE. I am of opinion there is no evidence of fraud, and for that reason the judgment ought to be affirmed. I express no opinion on the other issue, because the expression of it would avail nothing.

MR. CHIEF JUSTICE GARY (*dissenting*). The defendant pleaded failure of consideration; also fraud, and a counterclaim for damages. Paragraphs 3 and 4 of the answer, which will be reported, contain the allegations of fraud. There was testimony tending to sustain these allegations, but his Honor, the presiding Judge, ruled that fraud was not a defense to this action, and could not prevent a recovery upon the notes.

The note must be construed as if the provisions of chapter 34, article 1, of the Code of Laws of 1912, were embodied in them, as a part of the contract between the parties. *Phosphate Co. v. Arthurs,* 97 S. C. 358, 81 S. E. 663. In that case it was held that, if fertilizers did not come up to weight and guaranteed analysis and were not actually delivered in kind according to contract, recitals in a note for the purchase price as to the weight, that such sack bore the guaranteed analysis, that it bore inspector's tag, and that the seller had neither impliedly nor expressly warranted

the effects on the crops, and an agreement therein that the buyer could not hold the seller responsible for practical results, were attempts to dispense with the statutory requirements, and, therefore, void. That case did not rest upon fraud, but upon the ground that such recitals were against public policy—citing the case of *McConnell v. Kitchens*, 20 S. C. 430, 47 Am. Rep. 845.

We also have cases directly in point arising under chapter 34, art. I, of the Code of Laws of 1912, announcing the principle that fraud will render a contract for fertilizers void, to wit: *Germofert v. Castles*, 97 S. C. 389, 81 S. E. 665; *Germofert v. Delleney*, 97 S. C. 395, 81 S. E. 667; *Germofert v. Scruggs*, 97 S. C. 396, 81 S. E. 667. The same principle applies in other cases. *Welborn v. Dixon*, 70 S. C. 108, 49 S. E. 232, 3 Ann. Cas. 407. Indeed, we cannot recall any case, certainly in this State, in which our Courts have' held that a party perpetrating a fraud was not liable for the consequences of his wrongful act.

For these reasons I dissent.

MR. JUSTICE FRASER concurs in the dissenting opinion of MR. CHIEF JUSTICE GARY.