ABRAM L. KELLOGG, Plaintiff, *v.* COMMODORE HOTEL, INC., Defendant.

Supreme Court, Trial and Special Term, Otsego County, August 26, 1946.

*George W. Cregg* for defendant.

*James P. O'Donnell* and *Abraham L. Kellogg,* in person, for plaintiff.

SEARL, J. This is the return of an order to show cause granted by Justice HENRY J. KIMBALL, directing the plaintiff to show

cause at a term of this court held in the village of Herkimer, as to why an order should not be granted dismissing a second alleged cause of action (Rules Civ. Prac., rule 106) " and for such other and further relief " as to the court may seem just and proper. After argument by respective counsel and submission of authorities, defendant's counsel asked the court to consider the motion as also addressed to rule 103. Accordingly, the court granted both counsel additional time to submit authorities relative to relief under rule 103.

The complaint alleges, without the paragraphs' being numbered, " for a first cause of action " that on the 12th day of April, 1946, as the result of correspondence, for value received, " defendant entered into a written contract with this plaintiff to furnish him with lodging from April 27th, until April 30th, inclusive, in the afternoon of that day, double room and bath." The complaint further alleges that on April 27th " defendant, through its agents and servants, informed the plaintiff that they had no accommodations for him as provided by the written notice which plaintiff had received from the defendant and presented at the registration desk and all of which was confirmed by the assistant manager of the defendant."

Further, " That the cancellation of the contract the plaintiff had with said defendant was without notice to him in any manner whatsoever and without his knowledge or consent, and caused plaintiff considerable extra expense which he otherwise would not have had, and all of which was to plaintiff's damage in the sum of $5,000.00."

Then follow two other paragraphs:

" That by reason of the cancellation of the said contract hereinbefore referred to plaintiff was compelled to wait in the lobby of the said defendant, Commodore Hotel, for more than an hour in an endeavor to obtain lodgings elsewhere for himself and wife who accompanied him, and by reason whereof plaintiff's nerves were greatly upset and he was upset in both mind and body."

The next succeeding paragraph states that " The foregoing was contributed to by reason of the fact that neither the said defendant, through its agents or servants or manager, offered to or endeavored to assist the plaintiff in securing other accommodations for the night. That plaintiff was tired and wanted very much a place to rest right away by reason of the fact that he had traveled all day long, commencing as early as about 8:30 A.M., in order to reach the defendant's hotel located in the city of New York, and from all of which depression and

shock of nerves it took this plaintiff two days to recover therefrom to his great damage in the sum of $5,000.00."

Then follows a demand for judgment in the sum of $10,000.

It might fairly be argued at first sight, from the wording of the second paragraph of the complaint, commencing with the expression " The plaintiff herein for a first cause of action," that the pleader intended to allege two causes of action, one for breach of contract in which damage is asked to the extent of $5,000, and a second, in which a like amount is asked, because " nerves were greatly upset," " upset in both mind and body," and " depression ". However, when we consider that in a single cause of action for negligence the pleader may properly set forth, if desired, a claim for a definite sum for pain, suffering and disability, and additional claims for medical and hospital bills, we reach the conclusion that all the pleader here has done is to split his allegations as to claimed damages.

Therefore, neither the complaint as a whole can be dismissed, nor " one or more causes of action stated therein," under the provisions of rule 106.

Now comes the question as to whether the court can consider the application under the provisions of rule 103. The wording of the show cause order includes " and for such other and further relief as this Court may deem just and proper."

Had there been no appearance on the part of the plaintiff upon the return of the order to show cause, this court would be compelled either to grant or deny the relief sought for the specific reasons set forth therein. However, argument being had, and the court having the matter in hand, to avoid a multiplicity of motions, both parties having been granted opportunity to file additional memoranda, the court, in the exercise of a sound discretion, may properly deal with the question as to whether that portion of the complaint comprising what has been termed the second alleged cause of action should be stricken out on the ground that if left in the complaint the same " may tend to prejudice * * * the fair trial of the action ". (Rules Civ. Prac., rule 103.)

The opinion of the court in *Headdings* v. *Gavette* (86 App. Div. 592, cited with approval in *Randall* v. *Randall,* 139 App. Div. 674, 677) amply supports this position. In *People* v. *Supervisors of Delaware Co.* (45 N. Y. 196, 204) an order to show cause was issued as to why an attachment should not issue, as for contempt or " for such other or further order or relief as the court might think proper to grant." The court

then said " Under such a clause in the notice of motion, or in the order to show cause, relief may be given other than that specifically asked for  *  *  *." We find a similar holding in *Thompson* v. *Erie Railway Company* (45 N. Y. 468). Recently, in 1940, we find *Savage* v. *Mathieson Alkali Works, Inc.* (174 Misc. 1022, affd. 261 App. Div. 1053). Therein, the opinion of the trial court traces the development and effect of the expression " for such other and further relief as to the Court may seem just and proper." Also, section 117 of the Civil Practice Act applies to " Application for alternate or general relief on motion." The purpose of the section, derived from section 768 of the Code of Civil Procedure, was evidently to minimize practice motions and to save time.

As especially applicable to the instant motion is an opinion by Justice EDGCOMB in *Newton* v. *Livingston County Trust Co.* (231 App. Div. 355, 362) to the effect that " Pleadings are always before the court without being formally offered in evidence. They may be referred to by counsel during the trial and their contents may easily be brought to the attention of the jury. If that is done in the instant case, defendants would inevitably be prejudiced." That expression brings us directly to the nub of the instant inquiry. If damages cannot properly be awarded in this case against Commodore Hotel, Inc., because " plaintiff's nerves were greatly upset " and because of " depression ", then such statements have no place in the complaint, and should not be spread before a trial jury.

In reaching a conclusion some reference is necessary to the development of obligation of an innkeeper to a guest, from the time in England when the innkeeper was regarded as frequently in league with the highwayman to filch and rob the guest, through the ages, to the obligation of the present commercial hotel manager to his guest.

In *White's* case (2 Dyer 158 b), the innkeeper claimed that his house was full. The court held that if the cause of refusal was false the guest " may have his action on the case for his refusal."

In an early New York case, *Hulett* v. *Swift* (33 N. Y. 571, 572 [1865]) it was held " An innkeeper is responsible for the safe keeping of property committed to his custody by a guest. He is an insurer against loss, unless caused by the negligence or fraud of the guest, or by the act of God or the public enemy. This liability is recognized in the common law as existing by the ancient custom of the realm  *  *  *. This custom, like

that in the kindred case of the common carrier, had its origin in considerations of public policy."

The text in the cited case holds to the old English rule that an innkeeper is an insurer, yet even here we find a tendency to depart from the strict rule as favoring to some extent the views of Judge STORY (p. 575), "in his treatise on the law of bailments, that the innkeeper could exonerate himself from liability by proving that he was not guilty of actual negligence."

From 1865, the date of the decision in this *Hulett* case (*supra*), we find a constant strain of a more liberal view toward the innkeeper. In fact the term "inn", except in rural districts, has almost entirely been supplanted by the modern hotel, as commerce and the rapid means of transportation have increased.

The paramount question now before this court is: Should allegations relating to injuries to nerves and to "depression" be stricken from the complaint?

For the purpose of deciding this motion the truth of all allegations of the complaint must be assumed.

There is no allegation of intentional or willful injury on the part of the management or its agents, nor is there any allegation of indecent, improper or insulting remarks on the part of the room clerk or other employees of the hotel that would submit the plaintiff to humiliation.

A brief review of decisions in this State will aid in reaching a conclusion.

Plaintiff's counsel cites *Grinnell* v. *Cook* (3 Hill 485) to effect that " The innkeeper is bound to receive and entertain travellers * * *." No one can find fault with such a principle, so long as the innkeeper has space available. The cited case, however, deals with the question as to whether a guest who leaves his horse at an inn ceases to be a guest when he leaves the inn to dine elsewhere.

Next, counsel for plaintiff cites *Aaron* v. *Ward* (203 N. Y. 351). There plaintiff purchased a ticket admitting her to the use of a bathhouse and bathing beach. She was seeking to surrender her ticket for a key when a dispute arose between defendant's employees as to the right of another person first to be admitted. Plaintiff was ejected from defendant's premises. The court remarked (pp. 354–355): " It is contended for the defendant that as the action was on contract, the plaintiff was not entitled to any damages for the indignity of her expulsion from the defendant's establishment. It may be admitted that,

as a general rule, mental suffering resulting from a breach of contract is not a subject of compensation, but the rule is not universal. It is the settled law of this State that a passenger may recover damages for insulting and slanderous words uttered by the conductor of a railway car as a breach of the company's contract of carriage. (*Gillespie* v. *Brooklyn Heights R. R. Co.,* 178 N. Y. 347.) The same rule obtains where the servant of an innkeeper offers insult to his guest. (*de Wolf* v. *Ford,* 193 N. Y. 397.) '' In the cited case the opinion speaks of '' expulsion ''. That expression is found to be based on evidence when we refer to the case and exceptions. Not only does the complaint allege that the plaintiff was '' forcibly and summarily removed '', but the evidence of the plaintiff upon the trial indicated that defendant's agent not only called plaintiff a name, but '' He took me by the arm and used me roughly and threw me '' — '' shaking me back and forth.'' (Record on appeal, pp. 5, 14–15). The facts in this case but confirm the result that this court later arrives at in the instant proceeding.

The next authority cited by plaintiff is *Gillespie* v. *Brooklyn Heights R. R. Co.* (178 N. Y. 347). Elizabeth S. Gillespie was a passenger on defendant's car. She asked the conductor for change she claimed to be entitled to. In the words of the court (pp. 351–352), '' She subsequently asked him for it, when he, in an abusive and impudent manner, not only refused to pay it, but also grossly insulted her by calling her a dead beat and a swindler,'' — '' That the plaintiff suffered insult and indignity at the hands of the conductor, and was treated disrespectfully and indecorously by him under such circumstances as to occasion mental suffering, humiliation, wounded pride and disgrace, there can be little doubt.'' Later in the opinion the court speaks of '' insulting remarks,'' '' mental suffering caused by indignity and outrage '', '' insult arising from an act really or apparently dictated by a spirit of willful injustice or by a deliberate intention to vex, degrade or insult.'' From the language there seems no doubt that the award for mental suffering springs from the vindictive acts of defendant's agent.

The distinction relating to when damages for mental suffering may or may not be recoverable is stated in *Zabron* v. *Cunard Steamship Co.* (151 Iowa 345). Plaintiff claimed defendant failed to forward a ticket that would provide transportation from Russia to Cedar Rapids, Iowa, as a result of which she was denied passage with claimed resulting mental suffering. The court remarked (p. 351): '' The defendant exercised no such acts of authority over the plaintiff as would be necessary

in an ejectment case. There was no affirmative act on the part of the defendant that could cause feelings of humiliation and disgrace. All that the defendant did was to refuse to permit the plaintiff to embark, and such refusal involved no physical restraint." In the instant case, defendant likewise refused only to deliver an assigned room to plaintiff. The court held in the cited case that disappointment cannot amount to injury to feelings.

*Morningstar* v. *Lafayette Hotel Co.* (211 N. Y. 465) is cited by plaintiff. William Morningstar resided in the Lafayette Hotel. He purchased spareribs outside of the hotel. He had the chef prepare them and they were served in his room. He refused to sign a bill or check for $1 for their preparation. That evening he again refused to sign the check. At the breakfast table next morning he again refused, and " was told that he would not be served." The announcement was made publicly. The trial court charged the jury that if the charge was not a reasonable one, the refusal to serve plaintiff " was wrongful." Again, the court said: " The plaintiff, if wrongfully ejected from the café, was entitled to recover damages for injury to his feelings as a result of the humiliation ", citing the *Aaron* and *Gillespie* cases (*supra*). (On the question of injury to feelings see, also, opinion in *Curtin* v. *Western Union Telegraph Co.*, 13 App. Div. 253; *Mitchell* v. *Rochester Railway Co.*, 151 N. Y. 107.)

The last authority cited by plaintiff is *Boyce* v. *Greeley Square Hotel Co.* (228 N. Y. 106). The facts are set forth in the opinion in the Appellate Division (181 App. Div. 61). Plaintiff wife and her daughter had been registered by the husband in a New York hotel, the husband being informed by a room clerk that the wife, an invalid, could be visited for the purpose of the husband's giving her periodical treatments. While there for that purpose, two house detectives demanded entrance, came into the room, accused the parties of being there for " immoral " purposes and told the husband that he was under arrest. These agents of the defendant were far from respectful in the treatment of the plaintiff. The opinion in the Court of Appeals refers to the fact that defendant does not question that the acts of the servant were " abusing or insulting ".

The extent of the application of the rule universally adopted in this State is summed up in the opinion by Judge COLLIN in writing for the higher court (p. 111): " As a general rule, mental suffering resulting from a breach of contract is not subject of compensation. The rule does not obtain, however,

as between a common carrier or an innkeeper *and an insulted and abused passenger or guest,* or the proprietor of a public resort and a patron publicly ejected. (*Aaron* v. *Ward,* 203 N. Y. 351.) In the case here *the acts of the defendant were wrongful* and violative of the duty imposed by law. They were committed in virtue of a deliberate intent and design and were *willful* and not merely negligent. A willful injury means intentionally doing the act which is calculated or adopted to cause the injury, with design to inflict injury or with disregard of the natural consequences of the act." (Italics inserted.)

Thus, the above italicized words of our court of last resort give, in and of themselves, the answer to the question in the instant case. Had the plaintiff alleged that the acts of the room clerk or other employee of Hotel Commodore " insulted " or " abused " the plaintiff, had it been pleaded that the act of refusing him a room when he appeared at the hotel was " willful " the court would have a far different question to consider.

We are compelled to interpret the law relative to innkeeper and guest, as it has been handed down over a period of four hundred years, reasonably, as applied to the very unusual conditions existing during and since the late war. We can not be unmindful of the fact of shortage in living and housing conditions. The Government, through its various departments, has in many instances commandeered large blocks of hotel rooms in the larger centers. Ofttimes guests, because of delay in closing business transactions, retain their rooms beyond the period announced when they register in. This is almost a matter of common knowledge. Automatically this practice throws the plans and commitments of the hotel proprietor out of gear, especially when all the rooms are filled. The room occupant cannot well be thrown out without notice. Notice or other proceedings require time, and, of course, time is an element of the contract for the man who has that particular room reserved and demands immediate occupancy. The expression of the court in *de Wolf* v. *Ford* (193 N. Y. 397, 401) is applicable in the case at bar: " * * * he [innkeeper] is bound to accept as guests all proper persons so long as he has room for them * * *."

Without question, our respected plaintiff was tired when he arrived at the hotel in question and was naturally provoked when he was told he could not then be given the room he had engaged in advance. However, there is not the slightest hint

that the room clerk was either abusive, insulting or even disrespectful. Would it not be contrary to both good conscience and public policy to recognize a cause of action for injury to nerves and depression to all persons who found, because of emergency or other unusual conditions, the hotel proprietor could not deliver a room previously assigned? Very likely in these days when thousands must even lodge in trailers the courts might be short of accommodation were each intending hotel guest to estimate his injury to feelings in dollars and cents.

To permit the allegations as to injury to nerves and depression, as elements of damage, to remain in the complaint, would permit counsel to refer to them at least in opening to the jury, before a motion could be made to exclude testimony thereon. This would clearly be prejudicial to the fair trial of the issues to be submitted, and the rights of the defendant.

The words " and by reason whereof plaintiff's nerves were greatly upset and he was upset in both mind and body ", in the fifth paragraph of the complaint, as well as the sixth paragraph, commencing with the words " The foregoing " shall be stricken from the complaint.

The order automatically reduces the amount demanded in the prayer for relief from $10,000 to $5,000. Any amendment the plaintiff desires to make in respect thereof may be addressed to the discretion of the trial court.

Order accordingly.