KUHN, APPELLEE, *v.* BADER, APPELLANT, ET AL.

(No. 489—Decided March 17, 1951.)

*Messrs. Younger & Purdy* and *Messrs. Short & Dull,* for appellee.

*Messrs. Myers & Myers* and *Mr. Robert TouVelle,* for appellant.

GUERNSEY, J.  This is an appeal on questions of law from a judgment of the Common Pleas Court of Mercer County, in an action wherein the appellee, George Kuhn, was plaintiff and Lloyd Bader, the appellant,

and Otto Murphy were defendants. Defendant Murphy did not appeal.

The action is for damages for personal injuries sustained by plaintiff and alleged to have been caused by the negligence of the defendants.

The material facts in evidence, as disclosed by the bill of exceptions, are as follows:

1. The defendant Lloyd Bader is the owner and operator of Bader's Used Parts and Filling Station Lot located on the northeast corner of U. S. route 127 and Ohio route 219, some four miles south of Celina. Immediately north of the Bader place of business is the Willet farm, the barn on which is 2,000 feet north of the gasoline pumps of the Bader filling station. Immediately west of the Willet farm is a farm owned by Raymond A. Younger. Plaintiff lived on this farm and his father John Kuhn had been a tenant thereon for more than 20 years.

2. On June 15, 1946, the date this cause of action arose, the defendant Bader had two persons employed and working for him, namely, the defendant Murphy and Bader's brother, Vernon. Late during the afternoon of that day the defendants Bader and Murphy went to Coldwater on business and while there stopped at the Star Restaurant where they engaged in conversation with one Adkins. The general subject of this conversation was hunting and guns. The defendant Bader told Adkins that they were going to do some target practicing with a deer gun and invited him to join them, but Adkins was on a call. Upon returning from Coldwater, defendants Bader and Murphy, together with Vernon Bader, between 5:30 and 6 o'clock that evening, did shoot a deer gun on and over the above-mentioned premises of the defendant Bader. There is some conflict as to just how many times each

shot, but a fair statement from the evidence would be that each of the three shot at least twice.

3. Evidence introduced by plaintiff as to the direction in which the shots were fired was to the effect that the defendants, when questioned on the Monday following plaintiff's injury, said they were shooting in an easterly direction.

4. Defendant Bader's testimony was to the effect that all the shots fired by himself, Vernon Bader, and Murphy, except one fired by Murphy, were fired in an easterly direction toward a large pile of dirt and a big pile of gravel as a target. The pile of dirt was seven or eight feet high and the pile of gravel, which stood between the persons shooting and the pile of dirt, was four or five feet high. The pile of dirt was thrown out of an excavation made for the basement of a house under construction and was approximately 42 feet long.

5. The defendant Bader testified further that he did not shoot any shells at any place other than a target, but that there was one shot fired by Murphy other than at a target, and that he, Bader, then told Murphy that he did not want any more shooting in the air, and made him quit.

6. Lester Ebright, a witness called by the defendant Bader, testified that in the fall after the shooting Murphy, in his presence, talked to Clarence Kuhn, a brother of the plaintiff, and "admitted shooting George."

7. Clarence Kuhn, called as a witness by the plaintiff, testified that the actual words used by Murphy in the conversation were: "Clarence, I want you to tell your brother and your father that I am very sorry that this had to happen. * * * You know I don't have a cent to my name; and I can't help in that way."

8. Murphy, although present at the trial, did not testify.

9. Witnesses called by plaintiff, who had questioned the defendants following the injury to plaintiff, testified that Bader had said to them that "there were no shots fired in the direction of the barn"; that "they didn't shoot north"; that "they hadn't shot to the north"; that "none of them shot to the north"; and that Murphy, when questioned by them, answered in the same manner.

10. At the time this shooting was going on the plaintiff, together with the tenant on the Willet farm, Meyer, and three other neighbor boys were unloading baled hay in the barn on the Willet farm from a tractor-drawn trailer, the floor of the barn being about two feet off the ground. While working on this trailer the plaintiff was struck by a bullet which passed through his head. At the time, plaintiff was facing west and the bullet entered in front of his left ear and came out on the right side of his face in front of his right ear.

11. When plaintiff's injuries were discovered he was carried out of the barn to a water pump, after which Meyer got in his model A Ford and drove down to the Bader filling station to call a doctor. Upon leaving the barnyard Meyer had a blowout and drove the remaining 2,000 feet on a flat tire. On arriving at the Bader station, Meyer encountered defendant Bader, and they went into the station together, where Meyer used the telephone.

12. Shortly before Meyer drove up, Hubert Becker arrived at the Bader station, parked on the south side of the station and walked around to the north where he met the defendants together with Vernon Bader coming to the front of the station. At that time defendant Murphy had the gun in his hands. He gave it

to Becker together with the last two shells he had, and Becker walked east to the back of the station where he fired the two shells into a pile of sand or clay which had been dug out of the basement for a house then under construction. Before Becker shot he noticed and heard Meyer drive up, noticing particularly the noise which his car made because of its flat tire.

13. After Becker fired the two shells he came around to the front of the station and got Lloyd Bader and Vincent Meyer in his car and started toward Celina. He let Meyer out at the barnyard gate and took Bader on in to Celina.

14. The gun which the defendants used was a 32 caliber, special Winchester rifle commonly known as a deer gun. The undisputed evidence showed that the cartridge used in this gun contained 32.6 grains of gun powder, whereas an ordinary 22 long cartridge contains only 3 grains; that this amount of powder generates 35,000 pounds pressure per square inch when exploded; and that a bullet fired from this gun travels 2,260 feet per second with a range of between two and three miles. The ballistics expert from the Ohio Bureau of Investigation and Identification, whose testimony was uncontradicted, testified that in order to trap a bullet from this gun it was necessary to put two additional bales of cotton in the nest, and that it was the highest powered gun he had tested at the bureau during his 15 years of experience.

15. The defendant admitted at the trial that plaintiff was seriously injured. The evidence showed serious, permanent, physical impairment. The evidence showed further that the plaintiff, a young man in his twenties, now suffers frequent headaches; that he has a constant ringing in his ears; that he has partially lost his sense of taste and smell; and that he has a certain amount of numbness in his face and on part of his tongue.

16. The shooting took place on Saturday. Later that evening deputy sheriffs Richard Meiring and John Wiley went to the Willet farm to make an investigation. They discovered a bullet hole in the south side of the barn ten feet and six inches above the ground in line with the place where the plaintiff was standing when shot. The board containing the bullet hole was introduced as plaintiff's exhibit No. 1. Upon sighting through the bullet hole over the place where plaintiff was standing, investigators discovered that the bullet had lodged in the roof of a hen house 213 feet north of the barn. The bullet was recovered and introduced in evidence as plaintiff's exhibit No. 2. By sighting from the place where the bullet was found through the hole in the barn made by it, the Bader filling station could plainly be seen. Thereupon deputy sheriffs Meiring and Wiley went to the Bader filling station and talked to Vernon Bader who gave them a highpowered gun known as a 30-40. Later that night defendant Lloyd Bader went to the office of the sheriff and told him that the gun used was not the 30-40 which the sheriff had but a Winchester which the defendant Murphy then had at his home in Celina. The next morning, Sunday, deputy Meiring went to Murphy's home and obtained from him the 32 caliber Winchester rifle which was introduced in evidence as plaintiff's exhibit No. 3.

17. On Monday morning sheriff Raudenbush, deputy sheriff Wiley, Earl Willet, whose wife owned the Willet farm, and Raymond A. Younger, owner of the adjoining farm on which plaintiff lived and who at that time was common pleas judge of Mercer county, went to the Bader filling station and there interviewed both defendants. Vernon Bader had left town and did not return until Friday when he was interviewed by Walter Bernard, prosecuting attorney, deputy sheriff

Wiley, and Raymond A. Younger. Before this action was commenced Vernon Bader was killed in an automobile accident and, therefore, he was not a party defendant in this case.

18. On Monday morning the gun and the bullet were taken by deputy sheriff Meiring to the Ohio Bureau of Investigation and Identification at London, where extensive tests were made by Fred Dengler, the chief investigator and gun identification expert of the bureau, and his chief assistant, both of whom testified at the trial. Dengler testified, among other things, that he had fired a number of test shots from the gun; that the markings upon the bullets were similar to the markings upon the bullet identified as plaintiff's exhibit A; and that ballistic tests disclosed that the test shots had been fired from the same gun as plaintiff's exhibit A.

The defendant Murphy filed no answer and was not represented by counsel. The sole defense was made by Bader, who is now the defendant-appellant.

The jury returned a verdict of $5,000 against both defendants. Defendant Bader submitted three special interrogatories asking the jury, in the event of a verdict for plaintiff against both defendants, first, whether defendant Bader fired the shot, second, whether defendant Murphy fired the shot, or, third, whether Vernon Bader fired the shot. The jury did not answer any of these requests for special findings.

The plaintiff requested a special finding in the event of a verdict for plaintiff against both defendants and asked: "Is the jury able from the evidence to determine which defendant fired the shot causing damage to the plaintiff?" This special finding was answered, "No," and was signed by all twelve members of the jury.

Judgment was rendered upon the verdict, and this

is the judgment from which appeal is taken by defendant Bader.

The defendant Bader assigns error in the following particulars:

1. The trial court erred in overruling the motion of defendant Bader to require the plaintiff to make his petition definite and certain.

2. The trial court erred in refusing to give judgment for the defendant Bader upon the pleadings.

3. The trial court erred in refusing to grant the motion of defendant Bader at the close of plaintiff's case that a verdict for him be directed, which motion was renewed after both parties rested.

4. The trial court erred in its general charge to the jury.

5. The verdict of the jury and the judgment thereon are contrary to law.

Before considering these assignments of error we shall discuss the rules of law applicable to the facts established by the evidence. These rules, numbered consecutively, are as follows:

1. Except where two or more persons, each acting independently, create or maintain a situation which is a tortious invasion of a landowner's interest in the use and enjoyment of land by interfering with his quiet, light, air, or flowing water (4 Restatement of the Law of Torts, 449, Section 881), each of two or more persons whose tortious conduct is a legal cause of harm to another is liable to the other for the entire harm. 4 Restatement of the Law of Torts, 434, Section 875.

2. For harm resulting to a third person from the tortious conduct of another, a person is liable if he (a) orders or induces such conduct, knowing of the conditions under which the act is done or intending the consequences which ensue, or (b) knows that the other's conduct constitutes a breach of duty and gives substan-

tial assistance or encouragement to the other so to conduct himself, or (c) gives substantial assistance to the other in accomplishing a tortious result, and his own conduct, separately considered, constitutes a breach of duty to the third person. 4 Restatement of the Law of Torts, 435, Section 876.

If the encouragement or assistance referred to in clause (b) is a substantial factor in causing the resulting tort, the one giving it is himself a tort-feasor and is responsible for the consequences of the other's act. This is true both where the act done is an intended trespass and where it is merely a negligent act. 4 Restatement of the Law of Torts, 436, 437, Section 876, Comment on Clause (b).

Under this comment, on page 438, the following illustration of a negligent act is given:

"A and B are members of a hunting party. Each of them in the presence of the other shoots across a public road at an animal, this being negligent as to persons on the road. A hits the animal. B's bullet strikes C, a traveler on the road. A is liable to C."

The facts stated in the above illustration are somewhat similar to, and apparently adopted from, the case of *Oliver v. Miles* (1926), 144 Miss., 852, 110 So., 666, 50 A. L. R., 357, wherein it was held:

"Where two parties were jointly engaged in a hunting expedition, and, during such hunt, both fired across a public highway, and a person traveling thereon was shot, the parties are jointly and severally liable, although it is impossible to tell with certainty who inflicted the injury."

The following comment on that case appears in 38 American Jurisprudence, 944, Section 254:

"When the negligence of a member of a joint enterprise causes injury to a third person, such negligence is imputable to the other members of the enterprise

and all may be held liable for the injury. Pursuant to this principle, the view has been taken that where two parties were jointly engaged in a hunting expedition and, during such hunt, both fired across a public highway, and a person traveling thereon was shot, the parties are jointly and severally liable, although it is impossible to tell with certainty who inflicted the injury.''

It does not appear from the opinion in the case of *Oliver* v. *Miles, supra,* that the shooting across the highway violated any law. The court referred to the shooting as a negligent act and then concluded that the parties were engaged in the unlawful enterprise of shooting at birds flying over a highway; that they were in pursuit of a common purpose; that each did an unlawful act in such pursuit; and that each was liable for the resulting injury to the boy, although no one could say definitely who shot him.

From the context it is apparent that the court used the word, ''unlawful,'' in the sense of ''irregular, contrary to normal or acceptable procedure, especially not morally right or conventional,'' and not in the sense of ''not lawful, illegal.''

3. One who commands, directs, advises, encourages, procures, instigates, promotes, controls, aids, or abets a wrongful act by another has been regarded as being as responsible as the one who commits the act, so as to impose liability upon the former to the same extent as if he had performed the act himself. The liability in such case is joint and several. 52 American Jurisprudence, 454, Section 114.

4. The general rule is that two or more persons engaged in a common enterprise are jointly liable for wrongful acts done in connection with the enterprise. 52 American Jurisprudence, 455, Section 116.

5. For harm done to a third person from the tortious

conduct of another a person is liable if he permits the other to act upon his premises or with his instrumentalities knowing or having reason to know that the other is acting or will act tortiously. 4 Restatement of the Law of Torts, 442, Section 877.

6. The word, "tortious," is used throughout the Restatement of the Law of Torts to denote the fact that conduct, whether of commission or omission, is of such a character as to subject the actor to liability under the principles of the law of torts. 1 Restatement of the Law of Torts, 16, Section 6.

It is apparently used in the same sense in American Jurisprudence where tortious conduct is discussed.

7. Although it is not necessarily unlawful to shoot at a target, such act is dangerous and should be done with extraordinary care; and if the shooting is done where there are objects from which the balls may glance and endanger others, the act is wanton and reckless and the person doing the shooting will be chargeable civilly for injury resulting to another's person. 4 American Jurisprudence, 129, Note 19; *Welch* v. *Durand,* 36 Conn., 182, 4 Am. Rep., 55.

It will be noted that none of the foregoing rules and the comments thereon, including the illustration of the applicability of rule No. 2 and the case cited in support of such illustration, except the rule designated No. 7 which has no application to the joint and several liability of persons engaged in the commission of a tort, is predicated upon the persons liable being engaged in a lawful joint adventure or common enterprise, but rather upon their being engaged in a common enterprise which is either inherently tortious in character or which by reason of the extraordinary danger and hazard to other persons and property at the location and in the manner it is pursued is tortious in character. Consequently the rules of law applicable

to persons engaged in a nontortious joint or common enterprise are inapplicable to the facts of the instant case.

The liability of the defendants in the case at bar is, by the allegations of the petition and the manner in which the case was submitted to the jury, predicated upon the negligence of the defendants and such allegations are insufficient to charge the defendants with assault and battery as distinguished from negligence. Therefore, the rule which we have designated as No. 7 is applicable only to the question of the liability of the defendants for the acts done by them.

We will now consider the assignments of error in the order in which they appear and in the light of the rules mentioned, limited as hereinbefore set forth.

Assignment of Error No. 1.

The trial court erred in overruling the motion of defendant Bader to require the plaintiff to make his petition definite and certain.

Under the rules hereinbefore mentioned, the allegations of the amended petition were sufficient to inform the defendants of the facts plaintiff relied upon as a basis for his claim against them and each of them.

The cause of action pleaded is one for damages for a joint tort committed by defendants in pursuing a common enterprise.

The fact that defendants did not have proper backstops into which to shoot the bullets from the rifle or that they discharged the gun without taking proper aim is demonstrated by the allegations of the amended petition to the effect that the plaintiff, at a distance of about 2,000 feet from where the shooting occurred, was hit by a bullet from the rifle. No further allegations in this respect were necessary in order to fully inform defendants of plaintiff's claim.

This assignment is therefore without merit.

### Assignment of Error No. 2.

The trial court erred in refusing to give judgment for defendant Bader on the pleadings.

Under the rules hereinbefore mentioned, the plaintiff in his amended petition pleaded a cause of action for the recovery of damages for a joint tort, committed by the defendants in pursuance of a common enterprise, for which the defendants were jointly and severally liable. Therefore, the trial court did not err in overruling defendant's motion for judgment on the pleadings.

### Assignment of Error No. 3.

The trial court erred in refusing to grant the motion of the defendant Bader, made at the close of plaintiff's evidence and renewed at the close of all the evidence, that a verdict for him be directed.

The evidence tended to prove that the defendants and Vernon Bader were engaged in the common enterprise of target shooting on plaintiff's premises, in pursuit of which they used a large caliber rifle having a range of two or three miles, within which range many people were residing and working. A bullet from this gun passed through the side of the barn in which plaintiff was working, passed through plaintiff's head, and embedded itself in a wooden structure about two hundred feet distant. Plaintiff thereby sustained serious injuries.

The evidence disclosed further that the target at which the defendants shot was a pile of gravel in front of a pile of dirt. It is a matter of common knowledge, of which courts take judicial notice, that bullets fired into gravel have a tendency to ricochet in such a manner as to change their direction upon hitting the gravel. This would tend to prove that the defendants did not have proper backstops into which to shoot the bullets from the rifle.

The shooting of this rifle upon plaintiff's premises, under the circumstances and surroundings shown by the evidence, constituted a tortious act on the part of both defendants for which they are jointly and severally liable.

This assignment is, therefore, without merit.

Assignment of Error No. 4.

The trial court erred in its general charge to the jury.

Section I. The trial court erred in instructing the jury as to the law relating to a joint enterprise, no evidence having been introduced at the trial tending to prove that the defendant Bader was engaged in a joint enterprise which caused any damage to plaintiff.

Section II. The instructions of the trial court as to the law relating to a joint enterprise were erroneous.

Section III. The trial court erred in instructing the jury as to the law relating to the doctrine of *res ipsa loquitur,* no evidence having been introduced at the trial tending to establish facts which warranted such an instruction.

We shall consider the various sections of this assignment of error in the order they appear.

Section I. We have already discussed the question raised by the first section of this assignment and held that the evidence adduced at the trial tended to prove that the defendant Bader was engaged in a joint tortious enterprise which caused damage to plaintiff. For the reasons mentioned in our discussion, the error assigned in this section of the assignment is without merit.

Section II. The court did not err in instructing the jury as to the law relating to joint enterprise, as the pleadings allege facts showing joint enterprise, the evidence showed joint enterprise, and the admissions

of the defendant Bader in his testimony showed joint enterprise in shooting at the target.

Under this section of this assignment the defendant Bader further complains that, at the commencement of the general charge, the court stated: "The question of a joint enterprise arises in this case."

This statement is claimed by the defendant Bader to have been erroneous, but as joint enterprise is pleaded in the amended petition, and the admissions of such defendant on the witness stand showed that it existed, the court did not err in the respect mentioned.

Section III. Under this section of this assignment the defendant Bader contends that the court erred in instructing the jury as to the law relating to the doctrine of *res ipsa loquitur,* for the stated reason that there was no evidence tending to show that the rifle from which the bullet was fired was under the exclusive control and management of defendant Bader, and for the further stated reason that the undisputed evidence showed that Murphy fired in the air, establishing the existence of another equally efficient proximate cause.

The evidence did tend to prove that Murphy was the owner of the rifle in question, and that it was fired by the defendants and Vernon Bader in pursuance of their joint enterprise to shoot at a target. However, this evidence, in our opinion, did not tend to prove that the rifle was under the exclusive control and management of either of the defendants when it was being used by another of the persons mentioned.

The exclusive control and management of the means causing an injury by the person charged with causing the injury is a condition precedent to the application of the doctrine of *res ipsa loquitur.* Consequently, the court erred in charging on such doctrine.

The undisputed evidence did not show, as contended by defendant Bader, that Murphy fired in the air, thus establishing the existence of another equally efficient proximate cause. The evidence showed only that Murphy made a statement in the presence of one witness to the effect that he admitted firing the shot which injured the plaintiff, and that the defendant Bader testified that Murphy fired in the air. Opposed to this evidence was the testimony of witnesses to the effect that they inquired of each of the defendants whether any shots had been fired in any direction other than easterly, and that each of the defendants had stated none was so fired. In this situation, the jury had the right to believe or disbelieve the testimony as to Murphy shooting in the air or Murphy admitting that he was the one who fired the shot which injured plaintiff. The special verdict of the jury stating that it was unable to determine who fired the shot which injured plaintiff is conclusive on this point.

The question then arises as to whether the error of the court in charging upon the doctrine of *res ipsa loquitur* was prejudicial to defendant Bader.

As hereinbefore mentioned, plaintiff's cause of action against the defendants is predicated upon the defendants having been engaged in a joint enterprise which, by reason of the extraordinary danger and hazard to other people and property in the location and the manner in which it was pursued, was tortious.

Upon the admissions by defendant Bader in his testimony of the facts showing that he, the defendant Murphy and Vernon Bader, at the time plaintiff was shot, were engaged in the joint enterprise of shooting at a target of the character described by him, in pursuit of which enterprise they each shot leaden bullets from a long range rifle of large caliber at such target,

on and over defendant Bader's premises which adjoined farms upon which people were residing and working, and the uncontroverted testimony of an expert witness as to the caliber and range of the rifle and that the bullet which struck plaintiff was fired from the rifle those engaged in the enterprise were using, the court could properly have directed a verdict in favor of plaintiff and against defendant Bader upon all the issues of the case except the issue of damages, leaving that issue for the determination of the jury.

In support of our conclusion, we refer to the opinion in the case of *Hayes* v. *Kentucky Joint Stock Land Bank of Lexington,* 125 Ohio St., 359, 362, 181 N. E., 542, wherein it is stated:

"No other person testified to the contrary. * * * Her positive statement is not contradicted by any other witness, or by any other circumstances. Standing uncontradicted, it must be accepted as proof, in the absence of any testimony or circumstances from which a contrary inference can be drawn. The record discloses none."

The court having been warranted by the evidence in directing a verdict, as above mentioned, the charge upon the doctrine of *res ipsa loquitur* was not in any way prejudicial to defendant Bader.

For the reasons mentioned, this assignment is without merit.

### Assignment of Error No. 5.

The verdict of the jury and the judgment thereon are contrary to law.

Our discussion of the other assignments of error clearly demonstrates that this assignment of error is without merit, so we will not discuss it further except to state our conclusion that it is without merit.

As we find no error in any of the particulars assigned by defendant Bader and specified and argued in his briefs, the judgment of the Common Pleas Court is affirmed, and the cause is remanded for execution.

*Judgment affirmed.*

MIDDLETON, P. J., concurs.

JACKSON, J., concurring in the judgment, but dissenting in part from the opinion. The writer of this opinion concurs in the affirmance of the judgment of the lower court and agrees with the majority opinion except that part thereof wherein it is stated that the court erred, but not prejudicially, in charging on the doctrine of *res ipsa loquitur.*

The charge of the court on *res ipsa loquitur* was correct and warranted by the pleadings and the evidence.

The doctrine of *res ipsa loquitur* is one of evidence and not one of substantive law. It is a common-sense appraisal of the probative value of circumstantial evidence. It was not intended to relieve plaintiff from the general burden of proving the negligence of the defendant or from proving such facts and circumstances which would make negligence a legal inference. In other words, until the plaintiff has presented all the testimony reasonably within his power he can derive no benefit from this doctrine.

However, in the instant case I am of the opinion that the plaintiff presented all the evidence reasonably within his power to explain the cause of the injury.

Where the plaintiff alleges negligence generally as to the cause of his injury he can rely on the maxim of *res ipsa loquitur* to establish such negligence.

The doctrine does not dispense with the rule that

the party who alleges negligence must prove it. It merely determines the mode of proving it. Therefore, in applying the doctrine it is proper to permit the jury to infer negligence from the occurrence of an accident but it is not proper to require it to do so, that is, the doctrine furnishes circumstantial evidence which is sufficient to go before the jury, and such evidence must be weighed but does not necessarily have to be accepted as sufficient.

It would seem clear that the permissive inference is always evidence and must be weighed as evidence, and that it is to be considered by the jury since it may reasonably be inferred from all the facts presented. However, circumstantial evidence is entitled to consideration only so long as reasonable men might base a conclusion upon it. The underlying reason for the rule of *res ipsa loquitur* is that the facts of the injury are solely within the knowledge of the defendant and not accessible to the plaintiff.

The doctrine of *res ipsa loquitur* being a rule of evidence, it is not necessary to plead it. *Beeler* v. *Ponting,* 116 Ohio St., 432, 433, 156 N. E., 599; 29 Ohio Jurisprudence, 617, 633, Sections 144, 145.

The above-stated principles were approved in *Scovanner* v. *Toelke,* 119 Ohio St., 256, 260, 163 N. E., 493.

It is said that one of the elements necessary for the application of the doctrine of *res ipsa loquitur* is that the party sought to be charged must have the exclusive control and management of the means causing an injury.

In the instant case the fact that there were two defendants who were shooting a single gun in a tortious joint or common enterprise meets the condition required.