DONALD H. GOO, TEMPORARY ADMINISTRATOR OF THE ESTATE OF HENRY CHIN GOO, DECEASED, *v.* CONTINENTAL CASUALTY COMPANY, ET AL.

No. 4884.

August 14, 1970.

RICHARDSON, C.J., MARUMOTO, ABE, LEVINSON AND KOBAYASHI, JJ.

OPINION OF THE COURT BY KOBAYASHI, J.

This is an appeal by Donald Goo, administrator of the estate of Henry Chin Goo, deceased, plaintiff-appellant.

Plaintiff's complaint, as amended, prayed for actual and punitive damages, alleging that defendants, Continental Casualty Company, an Illinois corporation, hereinafter referred to as "Continental", and its local selling agency, Continental Insurance Agency of Hawaii, Ltd., hereinafter called "Continental-Hawaii", were guilty of fraudulent misrepresentations and concealment of material facts in selling a health and accident insurance policy to Henry Chin Goo through an agent of Continental-Hawaii. The complaint further alleged that the defendants

had oppressively, maliciously and wantonly cancelled the policy, refusing to pay a claim of the insured.

Defendants' answer denied these allegations as well as any liability for the claim, contending that the insured's prior medical history had been misrepresented to its soliciting agent and that therefore the policy was of no effect.

Over plaintiff's objection, the trial judge refused to instruct the jury on the issue of punitive damages. The jury found there existed a valid insurance contract and returned a verdict for the amount of the unpaid claim. Thereupon plaintiff moved for a new trial, limited to a determination by the jury of punitive damages. This motion was denied. The essential facts follow.

Mrs. Donald (Flora) Goo telephoned Continental-Hawaii requesting that a salesman visit her as she wished to consider purchasing a policy for her father-in-law, Henry Chin Goo. Mr. Tatsusei Yogi, Continental-Hawaii's agent, called at the Goo household on October 18, 1961. An application was filled out for Henry Chin Goo in Mr. Yogi's handwriting, in the presence of Mr. and Mrs. Donald Goo. Henry Chin Goo signed the application, and was present during part of the application interview, but he spoke Chinese, so the questions were mostly answered by Mrs. Flora Goo. Among the questions asked and answered was:

"3. Have you been *under observation* or had medical or surgical advice or treatment, or been *hospital confined* during the past 10 years? Yes. (If 'yes,' give dates, ailment, duration and result) In 1959 Queen's Hosp. 3 weeks tumor operation—Dr. Grover Batten recovered. In 1960 in Queen's Hosp. 2 days eye operation Dr. H. Q. Pang recovered." (Emphasis added)

In fact, Henry Goo fell on August 4, 1961, and was hospitalized until September 23, and fell again on October 13, 1961, and was hospitalized until October 15.

Donald Goo testified:

"A. * * * [A]nd she told him about, ah, he fell down. And I remember Mr. Yogi say, Oh, that's okay, the Company will check on it, on the doctor. I remember that much."

Flora Goo testified:

"A. * * * I did explain that Dr. Batten had him *under observation* and that when he released him, he didn't find anything physically wrong with him or prescribed any medication or cautioned me in any way." (Emphasis added)

On cross-examination Mrs. Goo testified:

"A. Well, I explained to him that he had fallen and that the doctor had him *under observation;* that he didn't find anything physically wrong with him; and Mr. Yogi said, well, that was all right. (Emphasis added)

\* \* \* \* \*

"Q. (By Mr. Swope [attorney for defendants]) Was it possible that Mr. Yogi did not understand what you had conveyed to him about *the 1961 hospitalization?* (Emphasis added)
"A. I think he did because I explained as far as the doctor's diagnosis.
"Q. Did you mention Doctor—
"A. Dr. Batten? Yes.

\* \* \* \* \*

"Q. (By Mr. Swope) Did you point out to Mr. Yogi that the '61 September–October *hospitalization* was not written on the application? (Emphasis added)
"A. No, because when I mentioned that he said that wasn't important or something to that effect."

Mr. Yogi testified:

"Q. (By Mr. Swope) Now, there is testimony in this case, Mr. Yogi, that there is also some hospitalization in—

"A. Yes.

"Q. —September and October of '61, which you did not put it in there?

"A. No, I—that one is I didn't hear that. Just this much I received the information this application time and—

"Q. I wasn't sure I got it all.

"THE COURT: He got you. He told you exactly what happened. He said he put it down all that he heard, is that correct?

"THE WITNESS: Yes, That means I—this much I got information from there so much I put in this much, nothing to hide."

Mrs. Goo also testified that Mr. Yogi stated that the policy would be continued as long as premiums were paid. A brochure which Mr. Yogi showed the Goos states: "This policy is renewable at the option of the company * * *." The policy itself provided for renewal at the insurer's option by acceptance of premium each quarter.

A policy covering three months was issued effective December 18, 1961. Subsequently Henry Goo fell twice and received brief emergency hospital treatment. Small claims for this treatment were paid by Continental.

Henry Goo fell again on May 31, 1962, and was hospitalized until July 11, 1962. Plaintiff filed a claim for this hospitalization. Defendants ultimately denied this claim on the ground that the answer to question three of the application omitted the immediately prior falls.

The question on this appeal is the appropriateness of the trial court's refusal to instruct the jury on the issue of punitive damages. It was and is plaintiff–appellant's con-

tention that defendants, through their agent Mr. Yogi, knew plaintiff's complete answer to question three of the application, and therefore their cancellation of the policy and refusal to pay for the hospitalization was fraudulently or oppressively, maliciously and wantonly done.

## I. SUFFICIENCY OF THE EVIDENCE TO SUPPORT PLAINTIFF'S REQUEST TO INSTRUCT ON THE ISSUE OF PUNITIVE DAMAGES.

The trial court held the evidence insufficient to allow the issue of punitive damages to go to the jury. To support a proper instruction there must be sufficient evidence presented on that issue of fact. *Gelber* v. *Sheraton-Hawaii Corporation,* 49 Haw. 327, 417 P.2d 638 (1966). It is no less prejudicial to refuse a requested instruction when supported by sufficient evidence.

We conclude, after a thorough and detailed review of the record of this case that appellant has failed to adduce sufficient evidence that appellees acted maliciously, oppressively, wantonly or fraudulently for the question to be submitted to the jury.

## II. SHOULD PUNITIVE DAMAGES BE RECOVERABLE FOR BREACH OF CONTRACT?

In this jurisdiction we have long recognized the wisdom of allowing punitive damages for willful, malicious, wanton or aggravated wrongs where a defendant has acted with a reckless indifference to the rights of another. *Bright* v. *Quinn,* 20 Haw. 504 (1911) ; *Howell* v. *Associated Hotels, Ltd.,* 40 Haw. 492 (1954) ; *Glover, Ltd.* v. *Fong,* 40 Haw. 503 (1954).

Punitive damages have been granted by the U.S. District Court of Hawaii, and affirmed by the Ninth Circuit,

in an action for deceit of an insurance agent who sold an insured a policy which was not suitable for the needs of the insured. *Anderson* v. *Knox*, 297 F.2d 702 (9th Cir. 1961), *cert. denied* 370 U.S. 915 (1962).

A small but growing number of jurisdictions[1] allow juries to award punitive damages in appropriate contract cases. Some of these jurisdictions allow punitive damages only where the breach of contract is accompanied by an independent tort. Others allow punitive damages "if the breach is accompanied by a fraudulent act, wanton in character and maliciously intentional."[2] South Carolina imposes no such limitation, allowing recovery of punitive damages for a fraudulent act which in and of itself is also a breach of contract.[3] *E.g.*, failure of an insurance agent to collect premiums contrary to established custom with intent to cause the policy to lapse because of increase in risk. *Hutcherson* v. *Pilgrim Health & Life Ins. Co.*, 227 S.C. 239, 87 S.E.2d 685 (1955).

The scope of what is recognized by common law courts

---

[1] Simpson, *Punitive Damages for Breach of Contract*, 20 Ohio St. L.J. 284 (1959), cites cases in the following jurisdictions as having allowed punitive damages for breach of contract: South Carolina. Texas, Mississippi, Virginia, and Nevada. In addition, Simpson says Kansas, Missouri, and Florida have intimated the same result in dicta.

Since Simpson collected these cases, others have undoubtedly joined the list, *e.g.*, Craig v. Spitzer Motors Inc., 81 Ohio L. Abs. 150, 160 N.E.2d 537 (Ohio App. 1959), noted 29 U. Cinn. L. Rev. 140 (1960).

Punitive damages have lately been allowed in labor relations. *See* Brandwen, *Punitive-Exemplary Damages in Labor Relations Litigation*, 29 U. Chi. L. Rev. 460 (1962).

New York recently allowed punitive damages in an action for equitable relief. I.H.P. Corp. v. 210 Cent. Park So. Corp., 16 App. Div. 2d 461, 228 N.Y.S.2d 883 (1st Dep't 1962), noted 63 Colum. L. Rev. 175 (1963).

[2] Whitehead v. Allen, 63 N.M. 63, 64, 313 P.2d 335, 336, (1957). *See also* D. L. Fair Lumber Co. v. Weems, 196 Miss. 201, 16 So. 2d 770 (1944).

[3] *See*, Howser, *The Awarding of Punitive Damages for Breach of Insurance Contracts in South Carolina*, 1 S.C.L.Q. 150 (1948) ; *Punitive Damages for Breach of Contract*, 10 S.C.L.Q. 444 (1958).

as a tort has grown so that torts and contract are no longer distinct, rather they overlap.[4]

"With the development of new concepts of tortious activity, torts were recognized which are intimately related to breaches of contract. Thus, inducing another to break his contract is a tort for which exemplary damages may be recovered. In many cases the law imposes on parties to a contract duties the breach of which is a tort for which exemplary damages may be awarded." (Citation omitted) 70 Harv. L. Rev. at 531.

Also, as Professor Simpson has pointed out: "[U]nder modern procedure the plaintiff pleads facts, not a form of action, and where the facts justify the assessment of punitive damages they should be so assessed whether plaintiff's theory of action be labeled contract or tort." Simpson, *Punitive Damages for Breach of Contract,* 20 Ohio St. L.J. 284 (1959).

The instant case, however, fails to present the proper factual situation to permit the court to take a determinative stance relative to punitive damages for breach of contract. We do not intend to intimate herein, any opinion whether punitive damages are ever recoverable in a claim based upon breach of contract.

Judgment of trial court is affirmed.

*Donald R. Nishimura* for plaintiff-appellant.

*Hale H. Hitchcock* (*William M. Swope* with him on the brief, *Cades, Schutte, Fleming & Wright* of counsel) for defendants-appellees.

---

[4] *See* Prosser, *The Borderland of Tort and Contract,* in *Selected Topics on the Law of Torts* 380, 402-20 (1953).

*See also,* Prosser, *Law of Torts,* § 93 at 635, 642 (3d ed. 1964).