MR. AND MRS. D. F. DOLD, MR. AND MRS. LEO
MANTHEI, Plaintiffs-Appellants, *v.* OUTRIGGER
HOTEL AND HAWAII HOTELS OPERATING
COMPANY, LIMITED, Defendants-Appellees

No. 5219

SEPTEMBER 29, 1972

RICHARDSON, C.J., MARUMOTO, ABE,
LEVINSON AND KOBAYASHI, JJ.

OPINION OF THE COURT BY KOBAYASHI, J.

This is an appeal by the plaintiffs, Mr. and Mrs. D. F.
Dold and Mr. and Mrs. Leo Manthei, from a judgment
in their favor. Plaintiffs' amended complaint prayed for
actual and punitive damages and alleged three counts
for recovery, breach of contract, fraud, and breach of an
innkeeper's duty to accommodate guests. (Count II for
fraud was voluntarily dismissed at trial.) Though the
judgment was favorable to them, the plaintiffs contend
that the trial judge erred in not allowing an instruction
on the issue of punitive damages. This is the issue before
the court.

FACTS

The plaintiffs, mainland residents, arranged for hotel
accommodations from February 18 to February 23, 1968,

through the American Express Company, the agent of the defendant, Outrigger Hotel, hereinafter referred to as "Outrigger". Hawaii Hotels Operating Company, Ltd., managed and operated the Outrigger. Both are Hawaii corporations.

Upon arrival at the Outrigger on February 18, 1968, the plaintiffs were refused accommodations and were transferred by the Outrigger to another hotel of lesser quality because the Outrigger lacked available space. On February 19 and 20 the plaintiffs again demanded that the defendants honor their reservations but they were again refused.

Though the exact nature of the plaintiffs' reservations is in dispute, the defendants claim that since the plaintiffs made no cash deposit, their reservations were not "confirmed" and for that reason the defendants justifiably dishonored the reservations. Plaintiffs contend that the reservations were "confirmed" as the American Express Company had guaranteed to Outrigger a first night's payment in the event that the plaintiffs did not show up. Further, the plaintiffs claim that this guarantee was in fact the same thing as a cash deposit. Thus, plaintiffs argue that the defendants were under a duty to honor the confirmed reservations. Although the jury awarded $600 to the Dolds and $400 to the Mantheis, it is not known upon which count the recovery was based.

An examination of the record in the instant case shows the following:

(1) It was the policy of the Outrigger that a reservation was deemed confirmed when either a one night's cash deposit was made or the reservation was made by a booking agent which had established credit with the Outrigger.

(2) The plaintiffs made their reservations through the American Express Company, which had established credit with the Outrigger.

(3) In lieu of a cash deposit, the Outrigger accepted American Express Company's guarantee that it would pay the first night's deposit for the plaintiffs.

(4) On February 18, 1968, the Outrigger referred 29 parties holding reservations at the Outrigger to the Pagoda Hotel which deemed these referrals "overflows".

(5) On February 18, 1968, the Outrigger had 16 guests who stayed beyond their scheduled date of departure.

(6) From February 15 to 17 and 19 to 22, 1968, the Outrigger also had more reservations than it could accommodate. Plaintiffs' exhibits Nos. 23 to 29 indicate the number of overflows and referrals of the above-mentioned reservations made by the Outrigger to the Pagoda Hotel on the following dates:

| February 15 | 20 referrals |
| " 16 | 20 " |
| " 17 | 32 " |
| " 19 | 44 " |
| " 20 | 9 " |
| " 21 | 9 " |
| " 22 | 20 " |

(7) Evidence was adduced that the Outrigger made a profit from its referrals to the Pagoda Hotel. Upon advance payment for the rooms to American Express who in turn paid Outrigger, the Plaintiffs were issued coupons representing the prepayment for the accommodations at the Outrigger. On referral by the Outrigger, the Pagoda Hotel's practice was to accept the coupons and bill the Outrigger for the actual cost of the rooms provided. The difference between the coupon's

value and the actual value of the accommodations was retained by the Outrigger.

The plaintiffs prevented a profit from being made by the Outrigger by refusing to use the coupons and paying in cash for the less expensive accommodations.

## MAY PLAINTIFFS RECOVER PUNITIVE DAMAGES FOR BREACH OF CONTRACT?

The question of whether punitive damages are properly recoverable in an action for breach of contract has not been resolved in this jurisdiction.

In the instant case, on the evidence adduced, the trial court refused to allow an instruction on the issue of punitive damages but permitted an instruction on the issue of emotional distress and disappointment.[1]

In a case involving a similar pattern of overbooking of reservations the court in *Wills v. Trans World Airlines, Inc.*, 200 F. Supp. 360 (S.D. Cal. 1961), stated that the substantial overselling of confirmed reservations for the period in question was a strong indication that the defendant airline had wantonly precipitated the very circumstances which compelled the removal of excess confirmed passengers from its flights.

---

[1]Plaintiffs' requested instruction No. 5, as modified, was given as follows:

[If you find in favor of the plaintiffs] you must determine the amount of damages the plaintiffs are entitled to recover. [If you find in favor of the plaintiffs,] [p]laintiffs have a right to recover all damages which they have suffered and which the defendants or a reasonable person in the defendants' position should have foreseen would result from their acts or omissions. Such damages may include reasonable compensation for emotional distress and disappointment, if any, which plaintiffs have suffered as a proximate result of the defendants' conduct. There is no precise standard by which to place a monetary value on emotional distress and disappointment, nor is the opinion of any witness required to fix a reasonable amount. In making an award of damages for emotional distress and disappointment, you should determine an amount which your own experience and reason indicates would be sufficient in light of all of the evidence.

In *Goo* v. *Continental Casualty Company*, 52 Haw. 235, 473 P.2d 563 (1970), we affirmed the public policy considerations behind the doctrine of punitive damages and acknowledged the fact that some jurisdictions allow a recovery of punitive damages where the breach of contract is accompanied by some type of contemporaneous tortious activity. However, the *Goo* case did not afford the proper factual setting for this court to consider the propriety of an assessment of punitive damages in contract actions.

Various jurisdictions have adopted their own rules regarding the nature of the tortious activity necessary to recover punitive damages in a contract action. Some require that the breach be accompanied by an independent willful tort (*Briggs* v. *Rodriguez*, 236 S.W.2d 510 (Tex Civ. App. 1951), *Carter Lumber Company* v. *Saide*, 140 Tex. 523, 168 S.W.2d 629 (1943)), or by a fraudulent act (*Bradley* v. *Metropolitan Life Insurance Company*, 162 S.C. 303, 160 S.E. 721 (1931)), or by a concurrent breach of a common law duty (*Brown* v. *Coates*, 253 F.2d 36 (D.C. Cir. 1958)).

We are of the opinion that the facts of this case do not warrant punitive damages. However, the plaintiffs are not limited to the narrow traditional contractual remedy of out-of-pocket losses alone. We have recognized the fact that certain situations are so disposed as to present a fusion of the doctrines of tort and contract. *Goo, supra,* 52 Haw. at 241, 473 P.2d at 567. Though some courts have strained the traditional concept of compensatory damages in contract to include damages for emotional distress and disappointment (*Kellogg* v. *Commodore Hotel*, 64 N.Y.S.2d 131 (Sup. Ct. 1946)), we are of the opinion that where a contract is breached in a wanton or reckless manner as to result in a tortious injury, the aggrieved person is entitled to recover in tort. Thus, in addition to damages for out-of-pocket losses, the jury was

properly instructed on the issue of damages for emotional distress and disappointment.

## MAY PLAINTIFFS RECOVER PUNITIVE DAMAGES FOR BREACH OF AN INNKEEPER'S DUTY TO ACCOMMODATE?

We now consider count III of plaintiffs' complaint. It has long been recognized that an innkeeper, holding himself out to the public to provide hotel accommodations, is obligated, in the absence of reasonable grounds for refusal, to provide accommodations to all persons upon proper request. *Perrine v. Paulos,* 100 Cal. App. 2d 655, 224 P.2d 41 (1950). This duty traditionally extended to the traveller who presented himself at the inn. However, where the innkeeper's accommodations had been exhausted, the innkeeper could justly refuse to receive an applicant. *De Wolf v. Ford,* 193 N.Y. 397, 86 N.E. 527 (1908); *Browne v. Brandt,* 1 K.B. 696 (1902); *Kisten v. Hildebrand,* 48 Ky. 72 (1848). It is well recognized that punitive damages are recoverable for breach of an innkeeper's duty to his guest where the innkeeper's conduct is deliberate or wanton. *Milner Hotels v. Brent,* 207 Miss. 892, 43 So.2d 654 (1949); *Stevenson v. John J. Grier Hotel Company,* 159 Ark. 44, 251 S.W. 355 (1923); *Piluso v. Spencer,* 36 Cal. App. 416, 172 P. 412 (1918); *McCarthy v. Niskern,* 22 Minn. 90 (1875); McCormick, DAMAGES § 81 (1935). We are not aware of any jurisdiction that renders an innkeeper liable on his common law duty to accommodate under the circumstances of this case. Consequently, plaintiffs are not entitled to an instruction on punitive damages on count III of their complaint.

Judgment is affirmed.

*Joe Thrasher (Tobias C. Tolzmann* with him on the briefs) for plaintiffs-appellants.

*Richard E. Stifel (Lawrence E. Condit* with him on the brief; *Jenks, Kidwell, Goodsill and Anderson of* counsel) for defendants-appellees.

CONCURRING OPINION OF MARUMOTO, J.,
IN WHICH ABE, J., JOINS

I concur in the result, but cannot agree with the reasoning in the opinion of the court nor with the statement that the contract here was breached in a wanton or reckless manner so as to result in a tortious injury entitling the plaintiffs to recover in tort.

The plaintiffs in the trial below requested and were refused instructions for punitive damages. They appealed that question and that question alone to this court. The issues presented were two in number: first, whether defendants breached a general, i.e. tort, duty owed plaintiffs in a willful and wanton manner so as to entitle them to the traditional instruction for punitive damages; and second, whether there was a contract between the parties and a subsequent breach, and if so, should punitive damages be permitted in such a situation.

In relation to the first issue, this court decided fifty years ago that it was "* * * too well established to admit of argument that in actions of tort punitive damages may, under certain circumstances, be awarded * * *." *Bright* v. *Quinn*, 20 Haw. 504, 511 (1911). There, and in subsequent cases, it was determined that such circumstances existed where the tort injury resulted from defendant's willful, wanton, malicious, or oppressive conduct. *Howell* v. *Associated Hotels, Ltd.*, 40 Haw. 492 (1954) ; *Glover, Ltd.* v. *Fong*, 40 Haw. 503 (1954). In *Goo* v. *Continental Casualty Co.*, 52 Haw. 235, 473 P.2d 563 (1970), we decided that the record of the case must clearly support a finding of the conduct proscribed by the earlier holdings.

Nowhere, however, have we intimated that a defendant's conduct might be considered as the sole factor determinative of the issues of a case. When one acts, he acts with impunity, unless his actions violate a legal duty imposed upon him by society or assumed by him in agreement with another. Therefore, it is mandatory that the actions of the defendants in this case be examined in

relation to the violations alleged or proven by the plaintiffs.

The common law duty of a hotel to accommodate all persons who present themselves to it is ancient and well settled in Anglo-American law. Burdick, *The Origin of the Peculiar Duties of Public Service Companies,* 11 Colum. L. Rev. 514, 743 (1911). The duty is general, owed to the public at large, and seems to have been laid upon the innkeeper only where no special assumpsit to the same effect existed.[1] The innkeeper was not obligated to provide the guest with the precise room selected but only with "reasonable and proper" accommodation, *Fell v. Knight,* 8 M. & W. 268, 275 (Ex. 1841); and there must have been room available at the time of the prospective guest's presentation. *Jackson v. Virginia Hot Springs Co.,* 209 F. 979, 980 (W.D. Va. 1913).

Considering that there was a contract in existence between the parties here, that the Outrigger arranged to accommodate the plaintiffs at the Pagoda, and that the Outrigger had no vacant rooms at the time of the plaintiffs' presentation, I see no violation by the defendants of their duty to accommodate. This, therefore, completes my examination of all tortious conduct alleged by the plaintiffs to have been committed by the defendants. I use the term "tortious conduct" in accordance with the overwhelming weight of authority to " * * * denote the fact that conduct whether of act or omission is of such a character as to subject the actor to liability under the principles of the law of torts." Restatement of Torts § 6, *Kuhn v. Bader,* 89 Ohio App. 203, 213, 101 N.E. 2d 322, 328 (1951).

As to the second issue, I encounter no difficulty in finding that a contract for accommodations existed be-

---

[1] The Restatement of Torts, both the original and the tentative draft of the Second, at § 866, appear to reflect this latter assumption, for it does not include within the scope of its coverage parties who are under a contractual duty to each other.

tween the opposing parties. Furthermore, I construe the contract as including both an aesthetic expectation on the part of the plaintiffs and a particular type of accommodation, namely, one in a hotel located on the beach as is the Outrigger. Nor am I hesitant to express my outrage at the greed and lack of consideration exhibited by the hotel.

At this point, however, I must draw the line. Save in actions for breach of a promise to marry, *Johnson* v. *Travis,* 33 Minn. 231, 22 N.W. 624 (1885), no other state of this union has ever approved an award of punitive damages in an action *ex contractu.* See Annot. 84 A.L.R. 1345 (1933). The Restatement of Contracts § 342, reflecting this overwhelming view, flatly prohibits such a recovery. This is so even where the breach is willful, *White* v. *Benkowski,* 37 Wis. 2d 285, 155 N.W. 2d 74 (1967), or where the parties have stipulated to such damages. *See Norris* v. *Letchworth,* 167 Mo. App. 553, 554, 152 S.W. 421, 422 (1912).

Rather than denying contractual punitive damages solely on the facts of this case, I would join with the other courts of this nation and prohibit them in all contract actions. This would overcome the confusion and doubt engendered by the majority opinion in this case and preserve a freedom of contract unclouded by uncertain legal penalties. It would be better in my opinion to agree with one of the foremost authorities on the subject when he states that " * * * it is of doubtful wisdom to add to the risks imposed on entering a contract this liability to an acrimonious contest over whether a breach was malicious or fraudulent * * * ." *Cf* McCormick, Hornbook Series on Damages § 81 at 291 (1st ed. 1935).

Of course where the breach is interwined with a tort then punitive damages may be given. *D.L. Farr Lumber Co.* v. *Weems,* 196 Miss. 201, 16 So. 2d 770 (1951). There seem to be two classes of such situations. The first is where the breach of contract is accompanied by a fraud-

ulent act, *Wellborn* v. *Dixon*, 70 S.C. 108 49 S.E. 232 (1904) , and the second is where the breach is accompanied by an independent tort. Simpson, *Punitive Damages for Breach of Contract*, 20 Ohio St. L.J. 284, 287 (1959) . Neither of those situations exists in this case.

Also, the question of damages for emotional distress is not before us today; yet, it has been decided. It seems far more preferable to me to strain the traditional concept of compensatory damages than to rupture the foundations of tort and contract liability. Accordingly, I would adopt the approach of *Kellogg* v. *Commodore Hotel*, 187 Misc. 319, 64 N.Y.S. 2d 131 (Sup. Ct. 1960) , and label the damages received by plaintiffs as compensatory.