■ In the Matter of LARRY DELGADO, Respondent-Appellant, v CAROLEE SUNDERLAND et al., Respondents, and GLEN HOCKLEY, Appellant-Respondent. [736 NYS2d 386] —In a proceeding pursuant to Election Law article 16, which was converted to an action for a judgment declaring, in effect, that the election of Glen Hockley, a candidate in the general election for the public office of Member of the Common Council of the City of White Plains held on November 6, 2001, cannot be certified by the Westchester County Board of Elections, Glen Hockley appeals, as limited by his brief, from so much of an order of the Supreme Court, Westchester County (Nicolai, J.), dated December 6, 2001, as, after a hearing, directed that a continued election be held in the 18th Election District on a day no earlier than December 17, 2001, and no later than December 20, 2001, and directed the manner in which the continued election was to be conducted, and the petitioner, Larry Delgado, cross-appeals from so much of the same order as denied that branch of his petition which was for a judgment declaring, in effect, that he received more votes in the general election held on November 6, 2001, than did Glen Hockley. By decision and order of this Court dated December 14, 2001, enforcement of the order dated December 6, 2001, was stayed, the Westchester County Board of Elections was stayed from certifying the results of the election insofar as it relates to Larry Delgado and Glen Hockley for the third contested seat of the White Plains Common Council, and those candidates were stayed from taking any steps towards the filing of an oath of office.

Ordered that the order is modified by deleting the provisions thereof directing that a continued election be held in the 18th Election District only, on a day no earlier than December 17, 2001, and no later than December 20, 2001, and directing the manner in which the continued election was to be conducted, and substituting therefor a provision directing that a new city-wide election between the candidates Larry Delgado and Glen Hockley be held on a date to be determined by the Westchester

County Board of Elections; as so modified, the order is affirmed, without costs or disbursements, and the matter is remitted to the Supreme Court, Westchester County, for entry of an appropriate judgment in accordance herewith.

In the November 6, 2001, general election for the public office of Member of the Common Council of the City of White Plains, six candidates competed for three contested seats. The official canvass resulted in a determination that candidates Rita Malmud and Thomas M. Roach, Jr., clearly garnered the greatest number of votes, while candidates Robert E. Tuck and Michael P. Amodio clearly garnered the least number of votes. The competition for the third seat was very close, however, with Glen Hockley receiving only slightly more votes than Larry Delgado.

One day after the election, Delgado commenced a proceeding pursuant to Election Law article 16 seeking to impound all the voting machines and ballots used in the election. The Westchester County Board of Elections (hereinafter the Board) and the other candidates did not oppose the petition. On November 14, 2001, after a recanvass of all the votes cast in the election, the Board determined that Hockley had received 47 more votes than Delgado.

On November 15, 2001, Delgado sought and obtained additional relief by order to show cause. In the papers appended thereto, which he labeled a "petition," rather than a "motion," he alleged, inter alia, that the unofficial canvass was "incomplete and inaccurate." He requested "a hand recanvass and court review" of the ballots and "a review and correction of the canvass of the machine cast ballots." More particularly, Delgado alleged that the voting machine in the 18th Election District of the City of White Plains had malfunctioned, causing it to record an inaccurate vote total for him, thereby casting the election results in doubt. He further requested that the Supreme Court examine this particular voting machine, correct any errors in the canvass of ballots, and direct that the Board examine the machine in question. Delgado did not purchase a new index number in connection with this second order to show cause, but used the index number assigned to his first order to show cause and petition. He did not file the order to show cause and "petition" until several days after they had been served on the various respondents.

Hockley moved to dismiss the second order to show cause and petition on the grounds, inter alia, that Delgado failed to purchase a second index number and filed the second order to show cause and petition after it was served. The Supreme

Court, inter alia, denied the motion to dismiss, and, upon determining that the voting machine in the 18th Election District had malfunctioned, directed that a continued election be held in that district only. Hockley appeals, arguing, inter alia, that the Supreme Court erred in denying his motion to dismiss the second order to show cause and petition. Hockley urges on appeal that, having brought to the Supreme Court a second order to show cause and petition, Delgado was required, pursuant to CPLR 304 and 306-b, to purchase a new index number and file the petition before serving it. We disagree.

While it is true that Delgado labeled his second set of papers an order to show cause and petition instead of an order to show cause and motion, in his second order to show cause, he indicated that the canvass which he had originally requested was incomplete. Further, he requested relief which was related to and contemplated by the relief which he requested in his original order to show cause, and which properly could have been sought in a subsequent motion. In addition, Hockley failed to specify any prejudice as a result of the mislabeling of the papers. The Supreme Court therefore correctly refused to dismiss this otherwise meritorious claim simply because the second set of papers presented to it was mislabled.

Moreover, Delgado's second order to show cause included a general prayer for "such other, further, and different relief as this court may find to be just and proper." Generally, a notice of motion or order to show cause must state the relief demanded and the grounds therefor (see, CPLR 2214 [a]). A court may grant relief, pursuant to a general prayer contained in the notice of motion or order to show cause, other than that specifically asked for, to such extent as is warranted by the facts plainly appearing on the papers on both sides (see, HCE Assoc. v 3000 Watermill Lane Realty Corp., 173 AD2d 774; see also, Thompson v Erie Ry. Co., 45 NY 468; Kellogg v Commodore Hotel, 187 Misc 319). It may do so in the absence of surprise or prejudice (see, HCE Assoc. v 3000 Watermill Lane Realty Corp., supra; see also, Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C2214:5, at 84), and the determination of whether to grant such relief is discretionary with the court (see, Van Slyke v Hyatt, 46 NY 259; Randall v Randall, 139 App Div 674, 676).

Although the prayer for relief contained in Delgado's second order to show cause did not explicitly request leave to amend the pleadings, he did request such relief in paragraphs 28 and 31 of the "petition" appended thereto, which, we have already noted, was in actuality a motion for additional relief in connec-

tion with the first order to show cause and petition. Under the exceptional circumstances of this case, we therefore would find it appropriate to grant Delgado leave to amend his original petition to add the claims raised in the "petition" appended to the second order to show cause.

Accordingly, we conclude that there was no necessity for Delgado to purchase a new index number and file anew in accordance with the provisions of CPLR 304 and 306-b.

The Supreme Court, however, should have directed a new citywide election, instead of a continued election in the 18th Election District only, between Hockley and Delgado for the third contested seat (see, Matter of Doherty v Mahoney, 42 NY2d 1069). It also should have afforded sufficient time before the new election to enable the Board to provide proper notice to the voters pursuant to Election Law § 4-120 (1), and to provide for the casting of absentee ballots. We therefore modify the order to direct that the new election be held on the earliest date deemed practicable by the Board taking into account these considerations.

We note that since this proceeding was converted to a declaratory judgment action, the matter must be remitted for entry of a judgment declaring the rights of the parties in accordance herewith (see, Lanza v Wagner, 11 NY2d 317, 334, cert denied 371 US 901).

The remaining contentions raised on the appeal and cross appeal are without merit. Feuerstein, J.P., Friedmann and Schmidt, JJ., concur.

Krausman, J., dissents and votes to reverse the order insofar as appealed from, to dismiss the second proceeding, and to dismiss the cross appeal as academic in light of his determination on the appeal, in the following memorandum: I believe that Delgado's failure to comply with statutory filing and service provisions requires us to dismiss his second proceeding. Furthermore, I disagree with my colleagues' position that dismissal can be avoided by either treating the second order to show cause and petition as a motion for further relief in the first proceeding, or by amending the petition in the first proceeding to include the additional claims contained in the second petition. Accordingly, I would reverse the order appealed from upon the ground that the second proceeding was not properly commenced.

The procedural facts underlying the commencement of these proceedings are essentially undisputed. On November 7, 2000, Delgado commenced the first proceeding by filing an order to show cause and petition seeking to impound all voting

machines and ballots that might affect the canvass and tabulation of votes cast in the general election for the office of Member of the Common Council of the City of White Plains. In his supporting petition, Delgado averred that the race for the third seat on the Common Council had been exceedingly close, and that machines used in the election may have been mechanically defective. Notably, the only relief requested in Delgado's first petition related to impoundment. To this end, the order to show cause signed by a Justice of the Supreme Court, inter alia, directed the Commissioner of Public Safety of the County of Westchester to impound the voting machines and all voting materials, including absentee and emergency ballots in the 18th Election District. The order to show cause further directed that the parties appear in court on November 9, 2001, "for the purpose of determining whether any further proceedings may be necessary with respect to the election at issue herein."

Following service of the first order to show cause and petition, an attorney representing candidates Hockley, Malmud, and Roach advised Delgado's attorney that his clients supported the application for impoundment, and would raise no objection to it. It was further agreed that the Supreme Court would be notified that there was no need for the parties to appear on November 9th "since there are no outstanding issues and no petition has been filed in this matter for any other relief."

Pursuant to the Supreme Court's order, the voting machines and ballots were impounded, and a recanvass was conducted, resulting in a determination that Hockley had received 47 more votes than Delgado. One day later, on November 15, 2001, another Justice of the Supreme Court signed a second order to show cause which sought various relief including an examination by the Westchester County Board of Elections of the voting machine in the 18th Election District which had allegedly malfunctioned, review of the canvass and recanvass of votes, and either an adjustment of the canvass of votes or a new election. The order to show cause was supported by a petition which set forth allegations of irregularities in the tabulation of votes. As the majority acknowledges, the second order to show cause and petition bore the same index number used in the earlier impoundment proceeding. In addition, the second order to show cause and petition were served on the respondents before they were purportedly filed.

On appeal, Hockley contends that Delgado's failure to purchase an index number and file his second order to show cause and petition prior to serving him were fatal jurisdictional

errors. I agree. In 1992, the Legislature made sweeping changes to New York civil procedure which "made the payment of a filing fee and the filing of initiatory papers the acts that commence an action or a special proceeding" (*Matter of Gershel v Porr,* 89 NY2d 327, 330; *see,* CPLR 304). Under the filing system, "service of process without first paying the filing fee and filing the initiatory papers is a nullity, the action or proceeding never having been properly commenced" (*Matter of Gershel v Porr, supra,* at 330).

The Court of Appeals' decision in *Matter of Gershel v Porr* (*supra*) illustrates the necessity of full compliance with the statutory filing requirements. In *Gershel,* the petitioner commenced a special proceeding by filing an order to show cause and petition, but failed to properly effect personal service. Rather than proceeding with a traverse hearing, the petitioner voluntarily withdrew his first order to show cause, and the Supreme Court marked the proceeding "dismissed." The petitioner then recast the order to show cause as a notice of petition, and served it and the petition on the respondent. The notice of petition and petition bore the same index number as the originally-filed order to show cause. In reaching its conclusion that the new proceeding had not been properly commenced, the Court of Appeals observed that "[b]y withdrawing the order to show cause rather than obtaining from the court a new return date and date by which service would be made of the filed order to show cause and petition, petitioner made the decision to start anew. Along with this decision came the obligation again to comply fully with the statutory filing requirements, that is, to file the notice of petition and the petition, pay the filing fee, secure an index number, effect service, and file proof of service within the prescribed period" (*Matter of Gershel v Porr, supra,* at 332). The Court of Appeals found that the petitioner's failure to properly comply with these filing requirements was a fatal jurisdictional defect.

The filing requirements set forth in CPLR 304 have been held to "apply with equal force to proceedings commenced under the Election Law" (*Matter of Connolly v Chenot,* 275 AD2d 583, 584). In keeping with the requirements of CPLR 304, the courts have found that the failure to properly file the initiatory papers in an Election Law proceeding, or effecting service prior to filing, renders the proceeding jurisdictionally defective (*see, Matter of Connolly v Chenot, supra; Matter of Kurtzberg v Mastroianni,* 262 AD2d 485; *Matter of Carnese v Ferraro,* 218 AD2d 770).

In this case, it is undisputed that Delgado failed to purchase

a new index number before attempting to commence a second Election Law proceeding, and that he served the respondents prior to purportedly filing his second order to show cause and petition. Although these are fatal jurisdictional defects which have not been waived by Hockley, the majority reasons that Delgado can be saved from the unfortunate consequences of his failure to comply with CPLR 304 by deeming the second order to show cause and petition to be merely a continuation of the first proceeding, rather than a second distinct proceeding. The flaw in this rationale is that Delgado's first petition sought only the limited relief of impoundment of voting machines and ballots, in order to ensure the integrity of the recanvassing process. The respondent candidates consented to the relief requested in the first petition, and no other issues remained outstanding once the impoundment order had been carried out. In contrast, Delgado's second petition sought additional relief not contemplated in the first proceeding, including a review of the canvass and recanvassing of votes, with particular scrutiny of the voting machine in the 18th Election District which may have malfunctioned. Along with Delgado's decision to request this additional relief, and seek either adjustment of the canvass of votes or a new election, came "the obligation again to comply fully with the statutory filing requirements," including paying the filing fee and securing an index number (*Matter of Gershel v Porr, supra,* at 332).

Alternatively, the majority reasons that dismissal of Delgado's second proceeding can be avoided by taking the extraordinary step of sua sponte amending the petition in the first proceeding to include the additional claims contained in the second petition. According to the majority, we may grant this relief to Delgado because his second petition contains two paragraphs requesting leave to amend the pleading, as well as a general prayer for "such other, further, and different relief as this court may find to be just and proper." This position does not withstand scrutiny. First of all, the two paragraphs in the second petition which contain requests to amend the pleading clearly do not refer to the petition in the impoundment proceeding. Rather, these two paragraphs, in virtually identical language, state that the petitioner "requests leave to, and reserves the right to submit further proofs by way of witnesses * * * and * * * evidence upon the date set by this court for the trial and hearing of this matter, and to amend these pleadings to reflect the facts adduced by way of further investigation and/or a canvass of the ballots." This language cannot be fairly interpreted as a request to amend Delgado's first petition.

Furthermore, the broad prayer for such other relief as may

be just and proper, which is contained in the second petition, does not provide us with the authority to revive the impoundment proceeding, which was no longer pending when the second order to show cause and petition were purportedly filed. Logic dictates that a complaint or petition which is no longer extant cannot be amended (*see, Hummingbird Assoc. v Dix Auto Serv.,* 273 AD2d 58; *Louden v Rockefeller Ctr. N.,* 249 AD2d 25). Moreover, CPLR 3025 (c), which authorizes the court to freely grant leave to amend a pleading "upon such terms as may be just," cannot be used as a device to circumvent the dismissal of a prior action (*see, Societe Nationale D'Exploitation Industrielle Des Tabacs Et Allumettes v Salomon Bros. Intl.,* 268 AD2d 373), or the filing requirements of CPLR 304. While dismissal may be considered a harsh result in this case, it is mandated by statute, and may not be circumvented by expanding the petition in the completed impoundment proceeding beyond its intended scope.