2010 VT 104

**Bonnie Lussier, Administrator of the Estate of Rejean Lussier v. Anthony Bessette, Rene Lussier and Adam Reed**

[16 A.3d 580]

No. 10-056

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed November 19, 2010

*Robert F. O'Neill, Ross F. Feldmann* and *Paul A. Kearney* of *Gravel and Shea,* Burlington, for Plaintiff-Appellant.

*Robin Ober Cooley* of *Pierson Wadhams Quinn Yates & Coffrin, LLP,* Burlington, for Defendant-Appellee Bessette.

*Jon T. Alexander* of *Spink & Miller, PLC,* Burlington, for Defendant-Appellee Lussier.

*Susan J. Flynn* of *Clark Werner & Flynn, P.C.,* Burlington, for Defendant-Appellee Reed.

¶ 1. **Reiber, C.J.** The trial court granted summary judgment in favor of defendants in this wrongful death action. On appeal, plaintiff argues the trial court erred in holding that defendants were not subject to concerted action liability for their participation in a hunt which culminated in the death of Rejean Lussier. We affirm.

¶ 2. Summary judgment is appropriate when there is no issue of material fact and the moving party is entitled to judgment as a matter of law. V.R.C.P. 56(c)(3). In reviewing the superior court's order granting defendants' motions for summary judgment, we apply the same standard as the trial court, viewing the facts in the light most favorable to plaintiff, the nonmoving party. See *Robertson v. Mylan Labs., Inc.,* 2004 VT 15, ¶ 15, 176 Vt. 356, 848 A.2d 310. So viewed, the relevant facts are as follows. On November 23, 2005, defendants Rene Lussier, Anthony Bessette, and Adam Reed were hunting with their friend Collin Viens, who is not a party to this lawsuit. During the hunt, Mr. Viens accidentally shot and killed Rejean Lussier, who was seated in the cab of a tractor in one of his fields. Mr. Viens was convicted of involuntary manslaughter, and we affirmed his conviction in *State v. Viens,* 2009 VT 64, 186 Vt. 138, 978 A.2d 37.

¶ 3. On the day of the shooting, the hunting party was engaged in a practice known as "pushing" or "driving," in which several hunters (called "pushers") walk through an area in a line to force game toward one or more "sitters." On the occasion in question, defendants were the pushers, and Mr. Viens was the sitter. By agreement of the group, Mr. Viens was positioned in a farm field

at the northeast corner of Rejean Lussier's woodlot so that he could see along the treeline into both the bordering fields. Defendants gave Mr. Viens approximately ten minutes to go ahead of them before they began walking the woods. Although some of the defendants knew the area's general layout, none had walked Mr. Viens's position that day and none could see Mr. Viens or the tractor at the time of the shooting. The Lussier farm and Mr. Lussier's tractor were to the east of where Mr. Viens was sitting. From his position on the woodlot corner, Mr. Viens would have been able to take shots at game emerging from the treelines in both easterly and southerly directions. There were also shots available in a westerly direction, though due to the setup of the hunt, a shot in that direction was unlikely. While defendants were walking in the woods, they heard Viens fire two shots. Mr. Viens initially told defendants that he had been shooting at a coyote, but he later admitted he made this up because he was embarrassed that the gun had accidentally discharged. Mr. Viens then fired a second shot into the woods to make it appear that he was shooting at game.

¶ 4. Apparently, while waiting in the field, Mr. Viens had shouldered his rifle, released the safety, and with his finger on the trigger, scanned his surroundings through the scope of the rifle. It is unclear whether Mr. Viens shot at the tractor in an intentional act of vandalism, or if the shot was an unfortunately timed misfire of his weapon. What is clear, is that Mr. Viens saw the tractor through his scope immediately prior to his rifle discharging, killing Mr. Lussier. At the time of the shooting, Mr. Viens was standing approximately 240 yards from Mr. Lussier and had a clear view of the tractor. Mr. Viens's handling of his rifle in the manner described violated several basic rules of hunting. Although Mr. Viens had no hunting license at the time of the shooting, it does not appear that defendants were aware of this fact. On the other hand, defendants were aware that Mr. Viens had passed his hunter's safety course and obtained his Hunter Education Certification. Defendants knew that Mr. Viens was a relatively novice hunter; however, they also knew he had hunted on prior occasions.

¶ 5. On November 21, 2007, the Estate of Rejean Lussier filed a wrongful death action alleging that the defendants' reckless hunting plan, in combination with Mr. Viens's actions, caused Rejean Lussier's death. The trial court granted summary judgment for defendants, noting that "there [wa]s no evidence that

would support a conclusion that they [we]re liable for their own wrongful conduct. [Defendants] did nothing that was itself tortious." The court found that defendants could not be held liable under a "concerted action" or "aiders and abettors" theory because "plaintiff [had failed to] show that Mr. Viens and the defendants acted knowingly in accord with a plan that they had agreed to participate in." As to the concerted action theory specifically, the court ruled that "the plaintiff would have to show that the defendants acted in accord with a 'common scheme or design' with Mr. Viens to shoot at a coyote or the tractor . . . [or] that [they] knowingly assisted Mr. Viens when he fired at the tractor in the manner that he did." According to the trial court's analysis, under the "Aider-Abettor theory, the plaintiff would have to show that the defendants knowingly assisted or encouraged Mr. Viens when he fired at the tractor." The court found that given the facts of this case "[t]here [wa]s simply no evidence . . . that would support a conclusion that any one of the three defendants assisted or encouraged Mr. Viens to recklessly fire a shot at the tractor in which the victim was sitting" and that therefore there was no concerted action and hence no liability on the part of the defendants. The trial court thus concluded in order to be liable under a concerted action theory, defendants needed to have some knowledge that they were encouraging specific, tortious conduct.

■ ¶ 6. Although there is little precedent, the trial court's analysis seems to track the Restatement (Second) of Torts, and those few cases which have addressed the issue of concerted action liability. As adopted by this Court, the Restatement sets out three alternative tests:

> A person is subject to liability for harm resulting to a third person from the tortious conduct of another if the person: (1) commits a tortious act as part of a common design with the other; (2) gives substantial assistance to the other knowing that the other's conduct is a breach of duty; or (3) gives substantial assistance to the other to accomplish a tortious result while also acting in a manner that is a breach of duty to the third person.

*Montgomery v. Devoid*, 2006 VT 127, ¶ 33, 181 Vt. 154, 915 A.2d 270 (citing Restatement (Second) of Torts § 876 (1979)).

. [2] ¶ 7. Though we have yet to expound upon the particular meaning of these prongs, other jurisdictions have done so and we

find their analyses instructive. In determining whether a tortious act has been done as part of a common design with another tortfeasor under the first prong of the Restatement, it appears that at least some level of knowledge or awareness of the pertinent attendant circumstances is required. In *Kuhn v. Bader*, 101 N.E.2d 322, 329-30 (Ohio Ct. App. 1951), the defendants were taking turns shooting an extremely high-powered rifle at a pile of gravel. One of the shots ricocheted and struck the plaintiff in the head while he was unloading hay on a nearby farm, causing him serious injury. The court took judicial notice "that bullets fired into gravel have a tendency to ricochet" and held that "shooting of this rifle upon plaintiff's premises, *under the circumstances and surroundings shown by the evidence*, constituted a tortious act on the part of both defendants for which they are jointly and severally liable." *Id.* at 329-30 (emphasis added). The defendants were engaged in identical tortious conduct and all knew the attendant circumstances — that an inadequate gravel backstop was being used with a high-powered gun — yet all chose to engage in and encourage conduct, which under the circumstances, created a foreseeable risk of harm. The court found concerted action liability because the shooters acted "knowing of the conditions under which the act [was] done." *Id.* at 327.

■ ¶ 8. The Restatement itself offers several illustrations which demonstrate at least a minimal knowledge requirement must be met before liability can be imposed on a common design theory. One illustration involves two drivers, A and B, drag racing on a public highway. Restatement (Second) of Torts § 876 cmt. a illus. 2. During the race, A collides with a third vehicle. *Id.* According to the Restatement, B would be liable under a concerted action theory in this instance. *Id.* B's actions are concerted with A's because B knows his own actions are dangerous, he knows A's actions are dangerous, and he knows that by continuing the race he is actively encouraging A to race. B has full awareness of the attendant circumstances and, under those circumstances, a reasonable person should have known that his actions could lead to harm. But if A had told B the road was closed for their drag race, their actions could not be concerted and B would not be liable, because the harm would not have been foreseeable under the conditions known to B. B is liable in the illustration because, based on his knowledge of the situation, the particular harm which occurred — a collision caused by a drag race — was foreseeable.

Because B engaged in and encouraged dangerous conduct *despite his awareness* of the danger and the possibility of harm arising from this particular conduct, he is liable under a concerted action theory when that exact harm comes to pass.

■ ¶ 9. Here though, defendants did not have the requisite knowledge of the circumstances attending Mr. Viens's conduct such that their actions should be considered part of a common design. Neither party disputes that Mr. Viens was at least ten minutes ahead of the defendants. Although some in the party were familiar with the general area, defendants had no direct knowledge of Mr. Viens's location, his surroundings, or the location of the tractor at the time of the shooting because no one had walked the area that day. Mr. Viens had never been admonished for reckless hunting practices, none of the defendants knew he had no hunting license, and all knew he had passed his hunters' safety course. At the time of the shooting, defendants did not know that Mr. Viens had disengaged the safety and pointed his gun at a tractor, with his finger on the trigger, or even that Mr. Viens was aiming in an unsafe direction. Defendants thus lacked the requisite knowledge to have been engaged in a common design with Mr. Viens at the time of the shooting.

■ ¶ 10. The second prong of the Restatement imposes concerted action liability when a party "knows that [another tortfeasor's] conduct constitutes a breach of duty *and* gives substantial assistance or encouragement to the other" tortfeasor. Restatement (Second) of Torts § 876(b) (emphasis added). As discussed above, defendants had no knowledge, nor any reason to suspect, that Mr. Viens was engaging in flagrant hunting violations in breach of his duty to Mr. Lussier. Because defendants did not know that Mr. Viens was engaged in conduct constituting a breach of his duty to Mr. Lussier, they cannot be found guilty of concerted action liability under this prong.

■ ¶ 11. The final prong of Restatement § 876 imposes concerted action liability where a party "gives substantial assistance to the [tortfeasor] in accomplishing a tortious result *and* his own conduct, separately considered, constitutes a breach of duty to the third person." Restatement (Second) of Torts § 876(c) (emphasis added). We have held that "[c]losely intertwined with the concept of 'substantial assistance' is the principle of proximate cause." *Montgomery v. Devoid*, 2006 VT 127, ¶ 21. The law of

proximate cause "calls for a causal connection between the act for which the defendant is claimed to be responsible and which is alleged to be negligent and the resulting flow of injurious consequences." *Rivers v. State*, 133 Vt. 11, 14, 328 A.2d 398, 400 (1974). The act for which defendants are claimed responsible here is the shooting of Mr. Lussier. However, Mr. Lussier's death was caused by Mr. Viens's negligent use of his firearm. There was nothing in defendants' hunting plan — walking through the woods to flush a deer — that would have Mr. Viens's hunting violations as its natural and probable result. Neither were defendants' actions a breach of some separate duty owed to Mr. Lussier. It is not the duty of those in a hunting party to supervise other members. *Kramschuster v. Shawn E.*, 565 N.W.2d 581 (Wis. Ct. App. 1997); see also *Remsburg v. Montgomery*, 831 A.2d 18, 24 (Md. 2003) (holding that hunting party leader was under no special duty to protect property owner from actions of hunting party member). Because defendants breached no separate duty to Mr. Lussier and because their actions did not proximately cause his death, they are not liable under this final prong.

¶ 12. Whatever the outcome of the above analyses, the Restatement cautions: "although a person who encourages another to commit a tortious act may be responsible for other acts by the other, ordinarily he is not liable for other acts that, although done in connection with the intended tortious act, were not foreseeable by him." Restatement (Second) of Torts § 876 cmt. d. As discussed above, we do not believe defendants encouraged Mr. Viens to commit his tortious act within the meaning of the Restatement, but even granting that, we do not believe Mr. Viens's actions were foreseeable.

¶ 13. Plaintiff argues that despite defendants' total lack of knowledge of the circumstances surrounding Mr. Lussier's death, Mr. Lussier's death was a foreseeable consequence of defendants' conduct. Plaintiff argues that "because [defendant]s' reckless hunting scheme created the risk of precisely the harm that occurred — the death of Mr. Lussier — they are liable, even if Mr. Viens's accidental discharge was unforeseeable." The first premise in this argument is that "an intervening cause does not relieve the original negligent party from liability if the intervening force was foreseeable" and the accidental discharge was foreseeable. The question here, however, is not whether an accidental discharge

was foreseeable — if it were, hunting in groups could become akin to a strict liability tort. Under this logic all hunters in a group would be liable for any accidental discharge from a gun of another member in their party *no matter the circumstances*. The pertinent question, rather, is whether Mr. Viens's conduct at the time of the accidental discharge, namely, violating hunting rules by pointing his loaded high-powered rifle with the safety off at a place likely to have people while his finger was on the trigger, was foreseeable as a result of defendants' hunting plan. It has not been shown that the defendants' plan was negligent. However, even assuming defendants' plan was negligent, it was not foreseeable that as part of this plan Mr. Viens would engage in these hunting violations that proximately caused Mr. Lussier's death.

¶ 14. The second premise in plaintiff's foreseeability argument is that when "an injury is a foreseeable consequence of negligent conduct, the actor is liable even [where] an unforeseeable intervening force also contributed to the result." Plaintiff is correct that "[w]here the negligent conduct of the actor creates or increases the risk of a *particular* harm and is a substantial factor in causing that harm, the fact that the harm is brought about through the intervention of another force does not relieve the actor of liability." *Chylinski v. Wal-Mart Stores, Inc.*, 150 F.3d 214, 217-18 .(2d Cir. 1998) (emphasis added, quotations omitted). The *particular* harm that Mr. Viens created was that someone would be shot as a result of his hunting violations. Thus, even if the shot was accidental, Mr. Viens is liable (and has of course been found so) because the death was a natural and probable result of his conduct. On the other hand, Mr. Lussier's death was not the natural and probable result of any actions by the defendants. The defendants may have created the risk that someone would be shot when Mr. Viens attempted to shoot a deer *in accordance with the group's hunting plan,*\* but, Mr. Viens was not acting pursuant to the plan when he looked through his scope at the tractor in

---

\* John Kapusta, a hunting expert for plaintiff, enumerated several possible harms made more likely by this plan: deer are often running quickly as a result of a push or drive such that quick and often careless decisions are made; hunters driving the deer may not appreciate the position of the shooter and thereby risk shooting him inadvertently; or the pushers may not know each others' locations and thereby risk shooting at other hunters inadvertently. None of these issues were at play in the death of Mr. Lussier. What is more, plaintiff has identified no risk inherent in deer driving that proximately led to Mr. Lussier's death.

boredom or poor judgment. Because Mr. Lussier's death was the natural and probable result of Mr. Viens's conduct, but not of defendants', defendants cannot be found liable. See, e.g., *Kramschuster v. Shawn E.*, *supra* (holding it is generally not foreseeable that another hunter in hunting party will violate hunting safety rules).

¶ 15. As a final matter, it must be noted that plaintiff's arguments with regards to the willfulness of Mr. Viens's shooting are irrelevant. Plaintiff argues that defendants "are subject to concerted action liability even for accidental harms caused by the members of their group" and that the trial court erred in finding defendants were "not liable for Mr. Viens's conduct because the evidence did not indicate that he was shooting at a deer." Plaintiff is correct that parties engaged in concerted action may be liable even for accidental harms caused by members of their group. See Restatement (Second) of Torts § 876 cmt. d ("If the . . . assistance is a substantial factor in causing the resulting tort, the one giving it is himself a tortfeasor and is responsible for the consequences of the other's act, . . . [whether] the act done is an intended trespass . . . [or] merely a negligent act."). However, the parties must actually be engaged in concerted activity before liability can be imposed, regardless of whether the harm was inflicted willfully or accidentally. "Liability of an individual defendant will not depend upon whether he actually [inflicted the plaintiff's harm]; *participation in the concerted activity* is equivalent to participation in the accident resulting in the injury." (emphasis added). *Herman v. Wesgate*, 464 N.Y.S.2d 315, 316 (App. Div. 1983). The pertinent inquiry for the trial court was whether defendants were engaged in concerted activity with Mr. Viens when he shot Mr. Lussier. Only if the parties were engaged in concerted activity would the question of willfulness become relevant. Because the trial court determined there was no concerted action as a matter of law, defendants could not be liable for Mr. Viens's torts, accidental or willful. Accordingly, we find no basis to disturb the trial court's grant of summary judgment.

*Affirmed.*